■ In the Matter of GARY VAN GAASBEEK, Petitioner, v MARK R. CHASSIN, as Commissioner of Health of the State of New York, et al., Respondents. [603 NYS2d 223] —Mikoll, J. P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which, inter alia, suspended petitioner's license to practice medicine in New York.

Petitioner, an obstetrician-gynecologist, was charged on November 7, 1991 by the Bureau of Professional Medical Conduct of the State Health Department (hereinafter BPMC) with practicing the profession with incompetence on more than one

occasion, negligence on more than one occasion, gross incompetence, gross negligence, failure to maintain accurate patient records and practice of the profession fraudulently, with moral unfitness and wilfully making or filing a false report as to patients A through F.

Petitioner was found to have been negligent and incompetent with respect to obstetric treatment of patients D and F and gynecological treatment of patients B and C, to have failed to maintain adequate medical records with respect to patients B, C, D and F, and to have knowingly filed a false statement in a registration application in October 1990.* Petitioner's license to practice in New York was suspended, except to the extent necessary for retraining, until he successfully completes a program of evaluation and retraining after which he shall be on probation for two years under the terms set by the Hearing Committee.

In this proceeding petitioner contends that the charges against him, which were not the subject of a preinvestigatory interview pursuant to Public Health Law § 230 (10) (a) (iii), should be dismissed. During the course of the disciplinary hearing and after BPMC had presented its entire direct case, petitioner made a motion to dismiss the charges which were not the subject of preinvestigatory interview pursuant to Public Health Law § 230 (10) (a) (iii) (as amended by L 1991, ch 606, eff July 26, 1991). The proceeding was conducted pursuant to the Laws of 1991 (ch 606) (eff July 26, 1991) in that the amended charges were served in August 1991. He urges that such interviews were a condition precedent to filing charges and are jurisdictional, requiring dismissal for nonconformity.

Public Health Law § 230 (10) (a) (iii) provides: "In the investigation of cases referred to an investigation committee, the licensee being investigated shall have an opportunity to be interviewed by the office of professional medical conduct in order to provide an explanation of the issues under investigation * * * Providing an opportunity for such an interview shall be a condition precedent to the convening of an investigation committee on professional misconduct of the board for professional medical conduct." The record indicates that petitioner was interviewed in March 1990 concerning treatment of the patients whose treatment is the subject of the instant charges. Such interviews were conducted almost 1½ years before the amendments to Public Health Law § 230 (10) (a)

---

* All charges as to patients A and E were dismissed.

became effective. We find petitioner's argument, that because certain charges based on factual allegations contained in paragraphs B.1 (a), B.1 (b), B.2 (b), B.3 (b), B.3 (c), C.1 (b), C.1 (c) (i), C.2 (a), D.3, D.4, F.2 and F.4 (a) were not discussed in the interview and should therefore be dismissed, to be without merit.

The legislative intent in amending Public Health Law § 230 was to expedite the disciplinary process while retaining the licensee's existing due process protections (see, Executive Dept Mem, 1991 McKinney's Sessions Laws of NY, at 2081; see also, Governor's Approval Mem, 1991 NY Legis Ann, at 332-333). We conclude that the interview to be conducted must only concern the broader issues of the charges and the patients involved without discussing the specific factual charges. Petitioner's right to due process is protected by requiring that the charges themselves be specific (see, Matter of Block v Ambach, 73 NY2d 323, 332-333). Here, petitioner received a precharge interview which was sufficient. We decline to dismiss the charges.

Petitioner next challenges whether the determination of fraud was supported by the record. As to petitioner's contention vis-à-vis the fraud allegation, i.e., that he had a good-faith basis, namely, the advice of counsel, for stating that his medical privileges had not been restricted or terminated in answer to an inquiry made of him or his registration, for the period of January 1991 to December 1992, despite the fact that monitoring had been imposed upon him at Kingston Hospital in Ulster County, we conclude that the record supports the Hearing Committee's finding of fraud. The Hearing Committee could infer that petitioner intended to deceive the BPMC by his response. He knew that he was being monitored and, despite his counsel's caution to him of the consequences of a negative response in what the lawyer denominated a "grey area", petitioner nonetheless chose to obfuscate the situation. We find that his actions constitute fraud (see, Matter of Sung Ho Kim v Board of Regents, 172 AD2d 880, 881, lv denied 78 NY2d 856). Respondents were not required to accept petitioner's exculpatory explanations (see, Matter of Kleiner v Sobol, 161 AD2d 987, 989, lv denied 76 NY2d 709).

Regarding the charges of negligence or incompetence, petitioner offers a variety of explanations regarding his conduct. Petitioner contends that his conduct in inducing labor in patients D and F was warranted based on patient D's insistence upon it and, as to patient F, due to her pregnancy exceeding 42 weeks. He argues also that the medical record as

to each patient, as a whole, adequately reflects the individual patient's history and medical condition and should not have been found inadequate.

The record discloses that after petitioner informed patient D that he would be away at the time of her expected delivery and that a substitute physician would have to attend her delivery, she insisted on labor being induced. The Hearing Committee found that despite the patient's insistence, given the circumstances of patient D's condition, i.e., there were no maternal or fetal complications requiring inducing of labor, the acceptable medical standard of care would be to allow patient D to progress spontaneously into labor. It concluded that induction of labor, without indication, could cause damage to the uterus, especially if induction fails and a caesarean section becomes necessary, as occurred here. We concur with the finding that induction of labor was not indicated.

As to patient F, the Hearing Committee found that labor was improperly induced in that fetal studies were not performed, there was no indication of fetal endangerment and the patient was not in active labor. The resolution of conflicting expert testimony in the record by the Hearing Committee, and accepted by the BPMC, contrary to petitioner's contention of absence of negligence and incompetence should not be disturbed (see, Matter of Matala v Board of Regents, 183 AD2d 953, 954-956). The findings of the Hearing Committee are supported by sufficient evidence.

As to charges involving inadequate recordkeeping, it was found that patient B's medical record was inadequate because it failed to sufficiently document a history of the nature of patient B's pain, its location, whether the taking of other medication was involved and whether she had previous treatment for pain. Petitioner's operative report also was found to be deficient in failing to describe the ovaries. The Hearing Committee concluded that the removal of an ovary and a cyst was done without adequate medical indication.

As to patient C, the Hearing Committee found that the medical history failed to include details of the illness, the duration of infertility, the nature of her menses and other factors before subjecting her to two surgeries within 16 days. Petitioner was found to have performed an exploratory laparoscopy without medical indication and a total hysterectomy and a bilateral salpingo-oophorectomy without medical indication.

As to patient D, the Hearing Committee found that the

medical record contained no reason for inducing labor and failed to record pelvic findings, without which patient D's condition was not adequately reflected so as to formulate a plan of treatment. Petitioner's use of high dosage oxytocin to induce labor was found to be beyond proper medical standard, excessive and inappropriate.

As to patient F, the Hearing Committee found an inappropriate use of high dosage oxytocin, also beyond accepted medical standard. The postoperative report indicated that she had suffered a previous ectopic pregnancy, but preoperative notes failed to disclose her prior history including four first trimester pregnancy losses, which should have been noted and would have called for close monitoring of the patient.

The deficiencies in petitioner's patient records for patients B, C, D and F were supported by sufficient evidence. Such lapses in documenting critical information constitutes professional misconduct.

Yesawich Jr., Mercure, Crew III and Mahoney, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.