◼ In the Matter of MARSHALL HUBSHER, Petitioner, v BARBARA DEBUONO, as Commissioner of the New York State Department of Health, et al., Respondents. [648 NYS2d 735] —Mercure, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Based upon his activities during a period of suspension from April 27, 1988 until October 26, 1989, petitioner, a physician practicing psychiatry and psychotherapy in New York, was charged in April 1994 with 13 specifications of professional misconduct, including charges of practicing the profession while his license was suspended (Education Law § 6530 [12]), failing to maintain records for each patient (Education Law § 6530 [32]) and practicing the profession fraudulently (Education Law § 6530 [2]). Following a hearing, a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter the Committee) sustained the charges against petitioner. Specifically, the Committee found that petitioner had provided medical treatment to a number of patients during the time his license was suspended, that he made diagnoses and prescribed medication to some of these patients, that he used the name of his brother, Merritt Hubsher, a licensed physician, in order to disguise the fact that he issued the prescriptions during his suspension, that he falsely led pharmacies to believe that the prescriptions were ordered by a licensed physician, that he failed to maintain appropriate records and that he practiced the profession fraudulently by failing to advise two patients that his license was suspended while he was treating them. These findings and the Committee's recommendation that petitioner's license to practice medicine in New York be revoked were sustained and adopted upon administrative appeal to the Administrative Review Board for Professional Medical Conduct (hereinafter respondent). Petitioner then brought this CPLR article 78 proceeding to review respondent's determination.

Initially, we reject the contention that the proceeding is barred by laches as a result of the five-year delay in the commencement of disciplinary proceedings against petitioner. In our view, petitioner has failed to satisfy his burden of demonstrating that the delay caused him actual prejudice (*see, Matter of Gold v Chassin*, 215 AD2d 18, 20, *lv denied* 87 NY2d 805; *Matter of Major v Board of Regents*, 160 AD2d 1041, 1044, *lv denied* 76 NY2d 705). Petitioner's conclusory allegations that the delay prevented him from interviewing witnesses, including Feliciano Kahn, the representative of the State Education Department who was assigned to supervise petitioner during the period of his suspension, and caused the loss of relevant documentary evidence, including notes, records and copies of prescriptions and correspondence, will not suffice. Notably, petitioner fails to state the manner in which Kahn would have assisted his defense or the efforts he made to locate her and secure her presence; nor does he identify any exculpatory evidence that was lost or discarded as the result of the delay in commencement of the administrative proceeding.

We are similarly unpersuaded by the argument that, because Kahn counseled or permitted petitioner to commit certain of the acts forming the basis for the disciplinary charges against him, the Bureau of Professional Medical Conduct should be estopped from proceeding on the charges against him. Petitioner premises this contention upon his own self-serving hearsay testimony to the effect that, although Kahn directed him to remove the sign identifying him as a physician from his office door and not to use his "M.D." stationery, she neglected to direct him to remove his professional listing from sign boards on the exterior or in the lobby of the office building and, further, that Kahn told him that he was not required by law to maintain records while he was not practicing medicine, that he would be permitted to practice psychotherapy (which requires neither licensure nor certification in New York) and that he could arrange for his patients to obtain prescriptions through Hubsher, so long as he and Hubsher first discussed the case.

Even if we were to credit petitioner's testimony in this regard, petitioner's central thesis fails because Kahn's representations did not as a matter of law contribute to the conduct forming the basis for the disciplinary charges against petitioner. Even by petitioner's account, we conclude that Kahn made him sufficiently aware of the prohibition against the posting of signs or other displays advertising his status as a practicing physician. Further, none of the charges against

petitioner are based upon allegations that petitioner practiced psychotherapy, failed to maintain records of his practice of psychotherapy or arranged to have Hubsher prescribe medication for his patients. Rather, the charges and findings are based upon petitioner's unauthorized practice of medicine by providing treatment, issuing prescriptions, formulating diagnoses, modifying dosage and altering medication for many of his patients, and his failure to keep any records reflecting that evaluation and treatment. Significantly, the Committee expressly found that it was petitioner's unauthorized practice of medicine that gave rise to the obligation to maintain the records that physicians are required to keep in their practice of medicine.

Next, we disagree with the assertion that respondent's determination was made in violation of lawful procedure, was affected by error of law, or was arbitrary and capricious or an abuse of discretion (see, CPLR 7803 [3]; Matter of Chua v Chassin, 215 AD2d 953, 954-955, lv denied 86 NY2d 708; Matter of Rudell v Commissioner of Health of State of N. Y., 194 AD2d 48, 50, lv denied 83 NY2d 754). Petitioner's exhaustive reference to his own testimony and other hearing evidence favoring his somewhat implausible theory of defense is unavailing in the face of contrary testimony providing a rational basis for respondent's findings of guilt by a preponderance of the evidence (see, Matter of Chua v Chassin, supra; Matter of Finelli v Chassin, 206 AD2d 717, 719; Matter of Matala v Board of Regents, 183 AD2d 953, 954); it is not our role to resolve credibility issues or weigh the testimony of witnesses, issues solely within the province of the administrative fact finder (see, Matter of Chua v Chassin, supra).

In the case of patient A, the patient's testimony and petitioner's own admissions supported respondent's findings that during the period of his suspension petitioner rendered medical treatment for depression by prescribing Imipramine and adjusting the dosage as needed, that he failed to advise patient A that he was not allowed to practice medicine and that he failed to maintain a record of his evaluation and treatment of the patient. Similarly, the respective patients' testimony or insurance claim forms submitted by petitioner established petitioner's treatment of patients B and D by performing heart and lung examinations and blood pressure checks, and patient C by conducting blood pressure checks and neurological examinations and treatments. Patient C's contrary testimony, wherein she indicated that petitioner never touched her except to take her pulse in connection with his

"relaxation therapy", merely raised a credibility issue that respondent was entitled to and did resolve against petitioner (see, supra). As with patient A, petitioner acknowledged that he maintained no records of his evaluation and treatment of patients B, C and D.

Further, a six-page handwritten memorandum prepared by petitioner (received in evidence as exhibit 9 ["Marshall Hubsher's list"]), as authenticated and with the foundational testimony provided by Hubsher, established the charges that petitioner engaged in the unauthorized practice of medicine with regard to the patients identified on exhibit I to the statement of charges. Essentially, the evidence showed that petitioner created the fiction that Hubsher practiced with him in his office and in fact acted as medical director of the nonexistent "North Shore Health Center". As part of the fraud practiced by petitioner, he would file health insurance claims and issue or call in prescriptions in the name of "Merritt Hubsher", "Dr. M. Hubsher" or simply "Dr. Hubsher". It was Hubsher's testimony, fully credited by respondent, that in the face of the investigation by the State Education Department, petitioner approached him with exhibit 9, a detailed list of patients petitioner had treated during the period of his suspension, together with petitioner's diagnoses and a list of the treatments he had performed and the drugs he had prescribed, in order to prepare Hubsher for questioning by the investigator. Of course, Hubsher was unwilling to engage in this charade, turned the list over to the Bureau of Professional Medical Conduct and ultimately became their primary witness in the proceedings against petitioner.

Petitioner's remaining contentions have been considered and found to be lacking in merit.

Mikoll, J. P., Peters, Spain and Carpinello, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.