[654 NYS2d 426]

In the Matter of SUSHILA GUPTA, Petitioner, v BARBARA DE BUONO, as Commissioner of the New York State Department of Health, et al., Respondents.

Third Department, February 27, 1997

APPEARANCES OF COUNSEL

*Lifshutz, Polland & Associates, P. C.,* New York City *(Alan Lambert* of counsel), for petitioner.

*Dennis C. Vacco, Attorney-General,* New York City *(Michael Melkonian* of counsel), for respondents.

OPINION OF THE COURT

CARPINELLO, J.

In December 1994, the Bureau of Professional Medical Conduct (hereinafter BPMC) filed charges of professional misconduct against petitioner, a licensed physician engaged in the practice of obstetrics and gynecology, stemming from her treatment of five patients (hereinafter patients A, B, C, D and E). Following an evidentiary hearing, a Hearing Committee of

respondent State Board for Professional Medical Conduct (hereinafter the Committee) found petitioner guilty of practicing the profession with gross negligence, negligence on more than one occasion, gross incompetence, incompetence on more than one occasion and failing to maintain accurate records. The Committee voted to revoke petitioner's license to practice medicine in New York. The Administrative Review Board for Professional Medical Conduct (hereinafter ARB) sustained the Committee's findings of misconduct, as well as the penalty imposed. Petitioner then commenced this CPLR article 78 proceeding to annul the ARB's determination.

■ Noting that this Court's inquiry is limited to whether the ARB's determination was arbitrary and capricious, affected by error of law or an abuse of discretion (see, e.g., Matter of Gottesman v New York State Dept. of Health, 229 AD2d 742, 743; Matter of Chua v Chassin, 215 AD2d 953, 954, lv denied 86 NY2d 708; Matter of Finelli v Chassin, 206 AD2d 717, 718-719), we first address petitioner's challenge to the sufficiency of the evidence against her. The crux of petitioner's contention that the Committee's conclusions are not supported by a preponderance of the evidence (see, Public Health Law § 230 [10] [f]) is that the Committee improperly disregarded her own expert testimony in this matter and the testimony of her witnesses in favor of the expert and lay testimony offered by the BPMC. This Court, however, does not decide credibility issues or weigh the testimony of expert witnesses, as these issues are solely within the province of the Committee as the administrative fact finder (see, Matter of Chua v Chassin, supra; Matter of Moss v Chassin, 209 AD2d 889, 891, lv denied 85 NY2d 805, cert denied — US —, 116 S Ct 170). In our view, the testimony adduced by the BPMC's witnesses, particularly the testimony of its expert witness, more than adequately supported the findings of misconduct against petitioner. More importantly, the contrary medical and lay evidence presented by petitioner merely created a credibility issue, which the Committee was free to, and did, resolve against her.

■ Petitioner next claims that Public Health Law § 230 (10) (a) (iii) was violated in this proceeding because she was not given an opportunity to be interviewed with respect to patients D and E and was not provided with notice that she could have counsel present during the interviews regarding patients A, B and C. Public Health Law § 230 (10) (a) (iii) provides, as pertinent here, the following: "In the investigation of cases

referred to an investigation committee, the licensee being investigated shall have an opportunity to be interviewed by the office of professional medical conduct in order to provide an explanation of the issues under investigation. The licensee may have counsel present. Providing an opportunity for such an interview shall be a condition precedent to the convening of an investigation committee on professional misconduct of the board for professional medical conduct."

Because petitioner concedes that she was given a telephone interview, albeit brief, with respect to patient D, we are unpersuaded by her claim that Public Health Law § 230 (10) (a) (iii) was violated with respect to this patient. This Court has concluded that "the interview to be conducted must only concern the broader issues of the charges and the patient[ ] involved without discussing the specific factual charges" (*Matter of Van Gaasbeek v Chassin*, 198 AD2d 572, 574, *lv denied* 82 NY2d 665). We find the telephone interview concerning patient D to satisfy these minimal requirements.

With respect to patient E, petitioner maintains that she was not given any interview and, therefore, the charges pertaining to this patient should be dismissed under the statute. We note that this objection was raised in petitioner's answer to the charges and on numerous occasions prior to and during the hearing before the Administrative Law Judge (hereinafter the ALJ). The ALJ would not consider the merits of this argument because, according to the ALJ, he did not have the authority to dismiss the charges. The ALJ advised petitioner's counsel that "this is the wrong forum to raise these issues" and that counsel could seek a stay of the proceedings in Supreme Court. The ALJ also precluded petitioner's counsel from addressing this issue during his examination of petitioner before the Committee.

The issue of whether petitioner was provided with the opportunity to be interviewed under Public Health Law § 230 (10) (a) (iii) was a legal objection to the proceeding which could have been, and should have been, resolved by the ALJ (*see*, Public Health Law § 230 [10] [e]). Although 10 NYCRR 51.9 (d) (2) provides that the ALJ (*see*, 10 NYCRR 51.2 [d]) does not have the authority to "dismiss the charges unless otherwise authorized by designation", Public Health Law § 230 (10) (e) clearly gives the ALJ the authority "to rule on all motions

\* \* \* procedures and other legal objections".\* In our view, this latter statutory provision gave the ALJ the authority to rule on this issue without running afoul of any regulatory prohibitions.

Notwithstanding the ALJ's error in this regard, this Court can address the merits of this issue in light of the pertinent objective documentary evidence contained in the record. To this end, we find it important to note that the purpose of amending Public Health Law § 230 to include, *inter alia*, the right of a physician to be interviewed was not to expand a physician's due process rights, but rather to improve and expedite the efficiency of the physician disciplinary process (*see*, Exec Dept Mem, 1991 McKinney's Session Laws of NY, at 2225; Governor's Approval Mem, 1991 NY Legis Ann, at 332-333). Notably, a September 27, 1994 Department of Health interoffice memorandum contained in the record demonstrates that petitioner was interviewed on that date by a BPMC physician regarding the care of patient E. In light of this evidence, we are unpersuaded that Public Health Law § 230 (10) (a) (iii) was violated.

It is also clear from the record that petitioner was sufficiently advised of her right to have counsel present during interviews regarding all five patients, including patients A, B and C. In any event, while Public Health Law § 230 (10) (a) (iii) does set forth that counsel may be present during interviews, this language in no way places the onus on the BPMC to advise a physician of such right. Thus, we would not consider any failure to advise petitioner of such right a violation of either the statute or petitioner's right to due process. As this Court has noted, "[p]etitioner's right to due process is protected by requiring that the charges themselves be specific" (*Matter of Van Gaasbeek v Chassin*, 198 AD2d 572, 574, *supra*).

We also find unavailing petitioner's contention that the penalty of license revocation is inappropriate in this case. In light of the instances of misconduct which petitioner was found to have committed (including her misdiagnosis of patient C's ectopic pregnancy as an intrauterine pregnancy; her failure to timely diagnosis patient B's fetus as suffering from spina bifida; her failure to provide adequate care to patient D who complained about the lack of fetal movement and delivered a

---

\* We note, however, that the ALJ properly precluded this issue from being raised before the Committee since the Committee is only vested with the adjudicatory power to determine petitioner's guilt or innocence on the charges and the appropriate penalty (*see*, Public Health Law § 230 [10] [g]).

stillborn baby three days later; and her failure to accurately measure fundal height), this penalty is not so disproportionate to the offenses as to shock one's sense of fairness (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 233; *Matter of Chace v De Buono*, 223 AD2d 961, 962; *Matter of Chua v Chassin*, 215 AD2d 953, 956, *supra*). Moreover, "[t]he fact that lesser penalties may have been imposed in other cases is immaterial since each case is judged according to its own peculiar facts and circumstances" (*Matter of Binenfeld v New York State Dept. of Health*, 226 AD2d 935, 937, *lv dismissed* 88 NY2d 1052; *see, Matter of Siddiqui v New York State Dept. of Health*, 228 AD2d 735, 738, *lv denied* 89 NY2d 804). Accordingly, we will not disturb the penalty imposed upon petitioner.

We have reviewed petitioner's remaining contentions and find them to be without merit. .

CARDONA, P. J., MERCURE, WHITE and CASEY, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.