■ In the Matter of MILES A. GALIN, Petitioner, v BARBARA A. DEBUONO, as Commissioner of the New York State Department of Health, et al., Respondents. [686 NYS2d 190] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, a licensed ophthalmologist, challenges the determination of a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter BPMC) finding him guilty of professional misconduct in the treatment of 11 patients (identified as patients A through H and K through M). Petitioner was found guilty of ordering excessive tests (Education Law § 6530 [35]), practicing medicine fraudulently (Education Law § 6530 [2]), practicing medicine negligently on more than one occasion (Education Law § 6530 [3]), and failing to maintain accurate records (Education Law § 6530 [32]). Substantial evidence in the record supports the BPMC's determination.

At the hearing, patients A, B, C, D, E and F testified with regard to their treatment by petitioner. Several of these witnesses stated that they reviewed summaries of payments made by their insurance carriers to petitioner and found that the bills reflected payment for specific tests (e.g., fluoroscein angiograms) that they were certain they had not received, and also for more treatment than had in fact been furnished. Additionally, respondents' expert, Paul Orloff, an ophthalmologist, opined that petitioner's office records were inadequate, as they failed to document test results and, in some instances, did not indicate a treatment plan for the patient. Moreover, it was Orloff's opinion that petitioner performed medically unnecessary tests as evidenced by the patients' records, which reflected the administration of tests that did not correspond with the

patient's symptomology. Expert testimony also supported the BPMC's determination that petitioner practiced negligently with regard to the care he rendered these patients.

The BPMC, which is invested with the power to assess the credibility of witnesses, lay and expert alike (see, *Matter of Brown v New York State Dept. of Health*, 235 AD2d 957, 958, *lv denied* 89 NY2d 814; *Matter of Gross v DeBuono*, 223 AD2d 789, 790), specifically determined that key witnesses, patients A through F, and Orloff were variously "believable", "credible", and "highly credible". Petitioner's suggestion, that the patient witnesses' memories may have faded with time and that they may have been unable to recall if, in fact, a test was actually performed, is unpersuasive given that the tests involved lengthy and sometimes invasive procedures.

A review of two memoranda contained in the record belies petitioner's assertion that he was not afforded a proper prehearing interview as required by Public Health Law § 230 (10) (a) (iii). The memoranda make clear that the two prehearing interviews were appropriate, dealing, as they did, with the "broader issues of the charges and the patients involved" (*Matter of Van Gaasbeek v Chassin*, 198 AD2d 572, 574, *lv denied* 82 NY2d 665; *see, Matter of Gupta v DeBuono*, 229 AD2d 58, 62). Nor does the record support petitioner's conclusory allegations of bias on the part of the BPMC investigator or that the BPMC's determination was influenced by such bias (*see generally, Matter of Pekarsky v Commissioner of N. Y. State Dept. of Social Servs.*, 257 AD2d 905, 906; *Matter of Moss v Chassin*, 209 AD2d 889, 890, *lv denied* 85 NY2d 805).

Also to no avail is petitioner's contention that the determination must be annulled because his hearing was not held within 60 days of being served with the statement of charges pursuant to Public Health Law § 230 (10) (f). The BPMC served petitioner on June 2, 1994 and designated June 30, 1994 for the hearing. Although the hearing was not commenced until January 11, 1996, its delayed start is attributable to petitioner's tactics—a motion in Supreme Court which stayed the hearing for one year,* additional delays occasioned by adjournments granted at petitioner's request and scheduling conflicts. Having virtually caused the delay, it ill-behooves petitioner to complain that he has been prejudiced thereby.

The unexplained eight-year delay in filing the statement of charges is indeed disquieting, but does not require dismissal,

---

* The stay was lifted by order of the First Department in July 1995 (217 AD2d 446).

for no Statute of Limitations governs the initiation of a disciplinary proceeding (*see, Matter of Monti v Chassin*, 237 AD2d 738, 740 [5 to 11-year delay]), and petitioner has failed to establish that he suffered actual prejudice by reason of this delay (*see, Matter of Lawrence v DeBuono*, 251 AD2d 700, 701-702 [8½-year delay]). Bald allegations that with the passage of time witnesses' memories dim are not enough; nor has petitioner demonstrated that there were any documents lost in the interim which petitioner claims would have exonerated him (*see, Matter of Hubsher v DeBuono*, 232 AD2d 764, 765, *lv denied* 89 NY2d 810). Not insignificantly, the record reveals petitioner was able to mount an adequate defense.

And given the "systematic fraud" that the BPMC found, which the record evidence confirms petitioner engaged in, revocation of his license and the imposition of a $55,000 fine does not constitute an unduly harsh and excessive penalty (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 233; *Matter of Larkins v DeBuono*, 257 AD2d 714, 716). Petitioner's remaining arguments have been found to be without merit.

Mikoll, J. P., Crew III, Peters and Graffeo, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.