(February 17, 2000)

■ In the Matter of OSKAR WEG, Petitioner, v BARBARA DE-BUONO, as Commissioner of Health, et al., Respondents. (Proceeding No. 1.) In the Matter of OSKAR WEG, Petitioner, v ANTONIA C. NOVELLO, as Commissioner of Health, et al., Respondents. (Proceeding No. 2.) [703 NYS2d 301] —Spain, J. Proceeding No. 1 pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent State Board for Professional Medical Conduct which, inter alia, suspended petitioner's license to practice medicine in New York.

Proceeding No. 2 pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which, inter alia, suspended petitioner's license to practice medicine in New York.

In October 1994, respondent Department of Health (hereinafter DOH) issued charges against petitioner, an orthopedic surgeon, alleging violations of Public Health Law § 18 (2) (d) and (e) for failure to provide, or timely provide, medical records to authorized representatives of four of his patients (hereinafter patients A through D), and for demanding unreasonable fees for providing the records. Prior to a hearing on those charges, petitioner and DOH signed a stipulation dated January 30, 1995 in which petitioner admitted the charged violations. Petitioner agreed to pay a civil penalty of $8,000, $6,000 of which was suspended contingent on petitioner's compliance

in the next two years with Public Health Law § 18, and DOH agreed to terminate the action "with prejudice."

In April 1998, following the receipt of complaints regarding petitioner's failure to provide medical records in a reasonable time and/or charging unreasonable fees therefor, the Bureau of Professional Medical Conduct (hereinafter the Bureau) charged petitioner with 10 specifications of professional misconduct. The first specification charged petitioner with misconduct pursuant to Education Law § 6530 (9) (c) for having been found guilty of violating a State statute, based upon his 1995 stipulation to the violations of Public Health Law § 18. The second through ninth specifications charged petitioner with misconduct pursuant to Education Law § 6530 (40) based on his failure to provide patient records to qualified persons for patients A through D as well as patients I through L in accordance with Public Health Law § 18. The 10th specification charged petitioner with misconduct pursuant to Education Law § 6530 (2) for making a false entry in the medical record of patient L.

Thereafter, a hearing before a Hearing Committee of respondent State Board for Professional Medical Conduct (hereinafter the Committee) was held. Petitioner, represented by counsel, testified in defense that he had withheld the relevant records for a variety of good-faith reasons (see, Public Health Law § 18 [11]). By decision and order dated October 14, 1998, the Committee sustained the charged allegations of professional misconduct under Education Law § 6530, largely discrediting petitioner's testimony in light of the contrary testimonial and documentary evidence. The Committee imposed a civil penalty of $50,000 and ordered a stayed suspension of petitioner's medical license during a period of probation of not less than five years, which stay would be lifted upon the receipt of any complaint against petitioner concerning Public Health Law § 18 or other laws governing the release of patient records.

On November 2, 1998, by order to show cause, petitioner requested this Court's review of the Committee's decision and order and a stay of that order (proceeding No. 1). On November 5, 1998, the Bureau served a notice of review to respondent Administrative Review Board for Professional Medical Conduct (hereinafter the Review Board) and, thereafter, by cross motion to this Court, moved to dismiss petitioner's petition based on that pending administrative review. This Court granted the stay of the Committee's order and denied the Bureau's cross motion to dismiss, but subsequently denied petitioner's motion to stay the proceedings before the Review Board.

Upon its review, the Review Board determined that the

Bureau's request for review was timely and that the Review Board was not precluded from reviewing the Committee's determination by virtue of petitioner's pending special proceeding in this Court. Further, it affirmed the Committee's determination as to the first through the ninth specifications but overturned the determination on the 10th specification. In addition—finding that the indefinite period of probation and the conditions of the stayed suspension imposed by the Committee were improper—the Review Board modified the penalty and imposed a 30-day actual suspension of petitioner's license and a five-year period of probation and reduced the monetary penalty to $8,000. Petitioner thereafter petitioned this Court for review of this determination as well, and this Court granted his request for a stay thereof pending our review.

### PROCEEDING NO. 1

As an initial matter, petitioner is incorrect in contending that the Bureau's November 5, 1998 request for administrative review by the Review Board was untimely and defective. Petitioner does not contest that the Bureau served a notice of review on November 5, 1998. Public Health Law § 230-c (4) (a) provides that "[a] notice of review must be served by certified mail upon the administrative review board and the adverse party within fourteen days of *service* of the determination of the [Committee]" (emphasis supplied). Significantly—as the Committee's letter accompanying its determination explained— "[s]ervice [of the Committee's determination] shall be * * * by certified mail upon the licensee * * * and such service *shall be effective upon receipt* or seven days after mailing by certified mail whichever is earlier" (Public Health Law § 230 [10] [h] [emphasis supplied]). Inasmuch as the Bureau received the Committee determination on October 22, 1998, the Bureau's notice of review—served upon and received by the Review Board on November 5, 1998—was timely.

Moreover, while the text of the Bureau's notice of review referenced an incorrect order number, the caption clearly referenced the correct order number and properly named petitioner. In addition, by letter dated November 12, 1998, the Bureau corrected the typographical error. Therefore, petitioner was provided proper and sufficient notice under Public Health Law § 230-c (*see, Matter of Ross v New York State Dept. of Health*, 226 AD2d 863, 866).

Equally without merit is petitioner's contention that the Review Board was without jurisdiction to review the Committee's determination at the Bureau's request simply because

petitioner sought review by this Court of the Committee's determination prior to the Bureau's request for review by the Review Board. Significantly, Public Health Law § 230-c (5) only permits judicial review of a Committee determination where "no review by the administrative review board was requested" (*see*, Public Health Law § 230-c [4] [a]), and the Bureau herein timely requested such review. Thus, this Court must yield to the Review Board's jurisdiction to review the Committee's determination (*see, Matter of Saunders v State Bd. for Professional Med. Conduct*, 253 AD2d 569; *see also, Selkin v State Bd. for Professional Med. Conduct*, 63 F Supp 2d 397, 400). Notably, we do not subscribe to petitioner's interpretation of Public Health Law § 230-c (5) that the chronological timing of a request for judicial review prior to a timely request for administrative review divests the Review Board of jurisdiction to review a Committee decision. In our view, since administrative review of the Committee decision was timely requested, CPLR article 78 review by this Court of that decision is not permitted (*see, id.*). Indeed, this Court reached this very conclusion in *Saunders* (*supra*) and again when it denied petitioner's motion to stay the Review Board proceedings. Accordingly, proceeding No. 1 is dismissed.

## PROCEEDING NO. 2

Upon review of the Review Board's determination, we reject petitioner's threshold contention with regard to specifications 1 through 5 that, under principles of res judicata, his 1995 stipulation precluded the Bureau from pursuing professional misconduct charges against him pursuant to Education Law § 6530 (9) (c) and (40) for withholding the records of patients A through D, or demanding excessive fees therefor. Notably, petitioner admitted in that 1995 stipulation—as charged in the Notice of Hearing and Statement of Charges dated October 14, 1994—that he violated Public Health Law § 18 with regard to patients A through D and waived his right to a hearing on those charges. That DOH agreed to terminate those 1994 Public Health Law § 18 charges "with prejudice" merely precluded DOH from thereafter refiling identical charges under Public Health Law § 18, and indeed the Bureau did not impermissibly do so. Rather, in 1998 the Bureau pursued professional misconduct charges pursuant to Education Law § 6530 which were not precluded by the terms of the stipulation under principles of res judicata.

The first specification charged petitioner with misconduct under Education Law § 6530 (9) (c) based upon his admission

of guilt by stipulation to violating a State statute, i.e., Public Health Law § 18. There is no question that in that stipulation he admitted to violating Public Health Law § 18 as alleged in the 1994 charges, which supports the Committee's and the Review Board's findings that he violated Education Law § 6530 (9) (c), thereby committing professional misconduct as charged in the first specification (*see, Matter of Carloni v DeBuono*, 245 AD2d 970; *Matter of Caselnova v New York State Dept. of Health*, 235 AD2d 864, *revd on other grounds* 91 NY2d 441; *Matter of Jayaram v Ambach*, 145 AD2d 838; *Matter of Sasson v Commissioner of Educ.*, 127 AD2d 875; *cf., Matter of Becker v DeBuono*, 239 AD2d 664, 665). His contention that his stipulation only constituted an admission that "his office" violated Public Health Law § 18 is specious, as petitioner alone was named as the respondent in the 1994 charges and the notice thereof and, further, Public Health Law § 18 imposes an obligation on the "health care provider" and not on his or her "office" (Public Health Law § 18 [2] [d], [e]). Also, the misconduct issue herein was distinct from that raised under the 1994 charges; the only issue under Education Law § 6530 (9) (c) is whether petitioner had stipulated to his guilt of violating a State statute which would constitute professional misconduct pursuant to section 6530—not whether he was in fact guilty of the admitted conduct—and, having demonstrated as much, the first specification was properly sustained.

The second, third, fourth and fifth specifications charge petitioner with professional misconduct under Education Law § 6530 (40) for failing to provide access to patient information for patients A through D in accordance with Public Health Law § 18. Contrary to petitioner's contentions, we do not find that the stipulation with prejudice barred these misconduct charges under principles of res judicata or collateral estoppel. Importantly, it has been recognized that there is an essential difference between charges of general violations of the Public Health Law and professional misconduct charges under the Education Law (*see, Matter of Pannone v New York State Educ. Dept.*, 54 AD2d 1014, *lv denied* 40 NY2d 808; *see also, Matter of Heins v Commissioner of Educ. of State of N. Y.*, 111 AD2d 535, *lv denied* 65 NY2d 611; *Matter of Erdos v New York State Dept. of Educ.*, 105 AD2d 504, *lv denied* 64 NY2d 604). Although both are overseen by DOH, the charges under Public Health Law § 18 (2) (d) and (e) concerned whether petitioner failed to timely provide patient information and at a reasonable cost, whereas the Education Law professional misconduct charges *sub judice* concerned respondents' regulation of the professional conduct of a licensed physician (*see*, Public Health

Law § 18 [2] [d], [e]). Indeed, the penalties available in these proceedings point to this fundamental distinction (*compare*, Public Health Law § 12 [1]; § 206 [4] [c], *with* Public Health Law §§ 230-a, 230; Education Law § 6530). The fact that both proceedings involved essentially the same conduct related to patients A through D does not render the issues therein the same or alter the substantial and essential difference in the purposes underlying the former and present proceedings and their statutory bases (*see, Matter of Pannone v New York State Educ. Dept., supra,* at 1015; *see also, Matter of Heins v Commissioner of Educ. of State of N. Y., supra,* at 536; *Matter of Erdos v New York State Dept. of Educ., supra,* at 504). Thus, while principles of res judicata are generally applicable to administrative determinations (*see, Matter of Pannone v New York State Educ. Dept., supra,* at 1015), they do not preclude specifications 2 through 5 of professional misconduct at issue herein.

Turning to the merits of the Review Board's determination regarding specifications 2 through 9, we have no difficulty in concluding that this administrative determination had a rational basis supported by the facts (*see, Matter of Brown v New York State Dept. of Health,* 235 AD2d 957, 958, *lv denied* 89 NY2d 814; *see also, Matter of Schoenbach v DeBuono,* 262 AD2d 820, 821-822, *lv denied* 94 NY2d 756). The evidence adduced at the hearing included the 1995 stipulation as well as the testimony and documentary evidence of the attorneys and/or parents representing patients I, J, K and L who had made repeated specific written record requests on their behalf, and petitioner and his staff's responses thereto. This evidence established that between February 1992 and April 1997 petitioner and his office staff engaged in a pattern of denying timely access to specifically requested patient information and records as to patients A through D and I through L (*see,* Public Health Law § 18 [2] [d]) and demanding unreasonable charges for copies of such information and records (*see,* Public Health Law § 18 [2] [e]). In all four instances as to patients I through L, the records were not turned over until after the patient's authorized representative was forced to resort to registering a complaint with DOH.

Despite petitioner's contentions to the contrary, we perceive no basis upon which to disturb the Committee's determination, adopted by the Review Board, rejecting his claimed defense of "good faith" denial of access to patient information (Public Health Law § 18 [11]). Notably, credibility determinations "are solely within the province of the administrative fact finder"

(*Matter of Brown v New York State Dept. of Health, supra*, at 958; *see, Matter of Morrison v DeBuono*, 255 AD2d 710, 711; *Matter of Brigham v DeBuono*, 228 AD2d 870, 874, *lv denied* 89 NY2d 801), and the Review Board was not required to accept petitioner's exculpatory explanations for denying the requested records (*see, Matter of Bottros v DeBuono*, 256 AD2d 1034, 1036). The Committee and the Review Board justifiably concluded that the written requests were sufficiently specific and established the authority of the person making the request, and that any errors or defects in the requests or patient authorizations did not justify petitioner's responses. Petitioner's various claims that his refusals to provide records were based, *inter alia*, upon a purported desire to protect patient confidentiality or deficiencies in the requests are belied by the evidence that these explanations for the denial of the requests were not offered to the authorized representatives and that petitioner, through his office staff, continued to demand unreasonable fees for providing these requested records. Accordingly, we find that the Review Board's determination sustaining specifications 2 through 9 was fully supported by the record and is rational and must be confirmed (*see, Matter of Brown v New York State Dept. of Health, supra*, at 957-958; *Matter of Chua v Chassin*, 215 AD2d 953, 954-955, *lv denied* 86 NY2d 708).

Further, in view of the fact that the Bureau twice sent petitioner by certified mail a properly addressed notice of his right to a prehearing interview pursuant to Public Health Law § 230 (10) (a) (iii), his contention that he was denied his right to such an interview because he never received such notice is meritless. Both letters were returned to the Bureau as unclaimed, apparently because petitioner does not accept certified mail (even from the entity which regulates his professional license); his refusal to accept official certified mail constitutes a waiver of this issue. Also, petitioner's due process rights were protected by the detailed statement of charges (*see, Matter of Gupta v DeBuono*, 229 AD2d 58, 60-62; *see also, Matter of Van Gaasbeek v Chassin*, 198 AD2d 572, 573-574, *lv denied* 82 NY2d 665).

Finally, considering petitioner's pattern of unjustifiably obstructing or denying timely access to patient medical records and information over a five-year period and his having continued to do so despite the substantially stayed monetary penalties imposed under the 1995 stipulation and a subsequent 1996 stipulation, we conclude that the penalty imposed by the Review Board—30 days' actual suspension of petitioner's license, five years' probation and an $8,000 civil penalty—was

commensurate with the offenses and not shocking to one's sense of fairness (*see, Matter of Brown v New York State Dept. of Health, supra,* at 958).

Cardona, P. J., Crew III, Peters and Graffeo, JJ., concur. Adjudged that the petition in proceeding No. 1 is dismissed, without costs. Adjudged that the determination in proceeding No. 2 is confirmed, without costs, and petition dismissed.