Matter of Weiner v New York State Bd. for Professional Med. Conduct (2025 NY Slip Op 05725)

Matter of Weiner v New York State Bd. for Professional Med. Conduct

2025 NY Slip Op 05725

Decided on October 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 16, 2025

CV-23-1071
[*1]In the Matter of Kevin Weiner, Petitioner,
v
New York State Board for Professional Medical Conduct, Respondent.

Calendar Date:September 9, 2025

Before:Garry, P.J., Aarons, Fisher, McShan and Mackey, JJ.

Abrams Fensterman, LLP, White Plains (Aaron Zucker of counsel), for petitioner.
Letitia James, Attorney General, New York City (Rosemary B. Boller of counsel), for respondent.

Garry, P.J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of a Hearing Committee of respondent, among other things, suspending petitioner's license to practice medicine in New York for two years.
Public Health Law § 230 governs the process for investigating and adjudicating professional medical misconduct. Respondent, through the Office of Professional Medical Conduct (hereinafter OPMC), is required to investigate every complaint of misconduct it receives and also may exercise its direction to investigate any professional misconduct it suspects (see Public Health Law § 230 [10] [a]). If a preliminary review uncovers sufficient evidence to suggest medical misconduct, OPMC may refer the case to an investigation committee of respondent; if a majority of the investigation committee concurs, charges may be brought against the licensee and a formal hearing before a hearing committee of respondent may be held (see Public Health Law § 230 [10] [a] [iii] [C]; [iv]). It is, however, a "condition precedent" to any such referral that the licensee being investigated be provided "an opportunity to be interviewed by [OPMC] in order to provide an explanation of the issues under investigation" (Public Health Law § 230 [10] [a] [iii]). Prior to such interview, the licensee must be provided timely written notice of "(1) a description of the conduct that is the subject of the investigation; (2) the issues relating to the conduct that have been identified at the time of the notice; (3) the time frame of the conduct under investigation; (4) the identity of each patient whose contact with or care by the licensee is believed to be relevant to the investigation; and (5) the fact that the licensee may be represented by counsel and may be accompanied by a stenographer to transcribe the proceeding" (Public Health Law § 230 [10] [a] [iii] [A]). Following the interview, OPMC must timely provide the licensee with "a copy of the report of the interviewer," and the licensee must also "promptly be given written notice of issues identified subsequent to the interview" (Public Health Law § 230 [10] [a] [iii] [B]).
In 2015, respondent received an anonymous complaint alleging that petitioner, a physician licensed to practice medicine in New York, was overprescribing opioids and/or selling prescriptions. OPMC accordingly began its investigation and requested that petitioner provide "a copy of the complete medical records" for 10 named patients. Petitioner provided OPMC with some records for those patients, for treatment dates back to 2013. In a November 2019 letter, OPMC offered petitioner the opportunity to be interviewed regarding the issues under investigation, listing the names of the 10 foregoing patients, as well as one other who was the subject of a medical malpractice claim against petitioner, an approximate treatment date range for each patient based upon the records submitted by petitioner or otherwise [*2]accessible to OPMC, and a nonexhaustive list of topics that could be raised during the interview regarding the 11 patients, including "[a]ny and all care and treatment, diagnoses, [and] prescribing patterns." Petitioner was interviewed in December 2019, after which a report summarizing the interview — including the topic of extensive missing records — was issued to him. Petitioner thereafter provided OPMC with some additional records, for more recent treatment dates. As a result, OPMC, in May 2020, offered petitioner a second interview, providing a similar notice but with expanded treatment time frames, now encompassing the new submissions. Petitioner declined to be interviewed a second time. OPMC subsequently determined that the matter should be presented to an Investigation Committee, which ultimately concurred that a formal disciplinary hearing was warranted.
In May 2022, following unsuccessful settlement negotiations, the Bureau of Professional Medical Conduct charged petitioner with 16 specifications of professional medical misconduct relating to five of the foregoing patients and generally spanning the years 2013 to 2017, including negligence on more than one occasion, incompetence on more than one occasion, unwarranted tests/treatment, and failure to maintain records. For four of the five patients, the numerous allegations of misconduct included petitioner's failure to properly render a diagnosis prior to instituting treatment with prescription medications. Petitioner answered, asserting, among other affirmative defenses, that the statement of charges contained factual allegations that he was not provided an opportunity to address prior to the filing of charges, in alleged contravention of Public Health Law § 230 (10) (a) (iii).
On the eve of the ensuing disciplinary hearing, petitioner belatedly submitted thousands of pages of medical records for the subject patients that had not been previously provided. Over the Bureau's objection, an Administrative Law Judge (hereinafter ALJ) ruled that all of the additional records would be admissible at the hearing. In September 2022, the Bureau sought leave to amend the statement of charges based upon the new records, which the ALJ granted in the absence of a showing of substantial prejudice to petitioner, as he had himself submitted the untimely records (see 10 NYCRR 51.6). The amended statement of charges set forth 20 specifications of misconduct [FN1] and generally expanded the treatment time frames and allegations at issue, to as far back as 2007; the amended charges similarly encompassed petitioner's alleged failure to properly render diagnoses prior to instituting treatment. Petitioner again answered, setting forth the same defenses. Following a nine-day hearing, a Hearing Committee sustained 16 of the 20 specifications in a 72-page decision, including those partially premised upon petitioner's failures to properly render diagnoses prior to treatment, and imposed a stayed two-year suspension of petitioner's [*3]license to practice medicine, among other penalties. This CPLR article 78 proceeding ensued.
Petitioner's sole argument is that the Hearing Committee's determination must be annulled as violative of Public Health Law § 230 (10) (a) (iii).[FN2] In petitioner's view, because the treatment time frames set forth in the two written notices excluded the periods in which he would have made his initial diagnoses of the subject patients, OPMC failed to inform him of all of the issues under investigation and thus failed to satisfy the statutory requirement that he be permitted an opportunity to interview regarding same prior to OPMC convening an Investigation Committee. This argument is disingenuous. Each notice had made clear that any and all diagnoses for the named patients were under investigation, and the treatment time frames specified therein were directly informed by petitioner's inappropriately piecemealed disclosures, which remained incomplete throughout the investigatory phase of this matter. It also warrants emphasis that petitioner's lack of documented diagnoses was regarded by the Hearing Committee as an ongoing failure, persisting past any initial appointments with the subject patients, and, thus, was not necessarily confined to the allegedly "excluded" periods.
Moreover, it has been repeatedly observed that "the purpose of amending Public Health Law § 230 to include . . . the right of a physician to be interviewed was not to expand a physician's due process rights, but rather to improve and expedite the efficiency of the physician disciplinary process" (Matter of Gupta v De Buono, 229 AD2d 58, 62 [3d Dept 1997]; see Matter of Van Gaasbeek v Chassin, 198 AD2d 572, 574 [3d Dept 1993], lv denied 82 NY2d 665 [1994]). Thus, the interview contemplated by Public Health Law § 230 (10) (a) (iii) need "only concern the broader issues of the charges and the patients involved" and need not "discuss[ ] the specific factual charges" (Matter of Van Gaasbeek v Chassin, 198 AD2d at 574; see Matter of Galin v DeBuono, 259 AD2d 788, 789 [3d Dept 1999], lv denied 93 NY2d 812 [1999]). The record reveals that petitioner was afforded sufficient notice of and opportunity to address the broader issues here, including his opioid prescribing practices for the named patients. Notably, he was also offered a second such opportunity, which he declined. To the extent that petitioner argues that the interview report similarly failed to inform him of the issues under investigation, the report demonstrates that the topic of petitioner's missing records was extensively addressed during the interview, as was the fact that his notes generally lacked the sort of preliminary information or rationale (e.g., chief complaints, complete patient histories and comprehensive physical examinations) that properly underlies a working and/or differential diagnosis. This process was amply sufficient for OPMC to refer the matter to an investigation committee.
To the extent that petitioner maintains [*4]that he was entitled to a Public Health Law § 230 (10) (a) (iii) interview at some point between his novel hearing disclosures and the Bureau's filing of amended charges, we agree with respondent that nothing in the governing statute required the reopening of the investigatory stage of this matter or the provision of another OPMC interview. Petitioner does not contest the propriety of the ALJ's decision to permit the amendment, and, ultimately, both the initial and amended charges stated plainly that petitioner's failure to properly render a diagnosis prior to instituting treatment would be at issue in the disciplinary proceeding, apprising him of the charges against him in that respect and providing ample opportunity to prepare an adequate defense (see Matter of Block v Ambach, 73 NY2d 323, 333 [1989]; Matter of Anghel v Daines, 86 AD3d 869, 871 [3d Dept 2011]; Matter of Van Gaasbeek v Chassin, 198 AD2d at 574; see also Public Health Law § 230 [10] [a] [vii] [b]). In sum, we are assured that petitioner was accorded all of the process to which he was due.
Aarons, Fisher, McShan and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: The initial specification regarding incompetence was split into five specifications in the amended charges, accounting for the increased number of specifications.

Footnote 2: It does not appear that the ALJ resolved this legal objection, but that does not impede our review under the circumstances (see Matter of Gupta v De Buono, 229 AD2d 58, 61-62 [3d Dept 1997]).