■ In the Matter of ROBERT LARKINS, Petitioner, v BARBARA A. DEBUONO, as Commissioner of Health of the State of New York, Respondent. [682 NYS2d 732] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c) to review a determination of the Administrative Review Board for Professional Medical Conduct which, *inter alia*, revoked petitioner's license to practice medicine in New York.

In March 1997, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, a licensed osteopathic physician, with 14 specifications of misconduct. Specifically, petitioner was charged with at least one specification of practicing medicine fraudulently, practicing with negligence on more than one occasion, practicing with incompetence on more than one occasion, ordering excessive tests and treatments, and failing to maintain adequate patient records. The charges stemmed from petitioner's care and treatment of patients A, B, C and D during portions of 1991, 1992 and/or 1993.

At the conclusion of the administrative hearing that followed, at which expert testimony was adduced on behalf of petitioner and the BPMC, the Hearing Committee found that petitioner practiced the profession fraudulently, ordered excessive tests and treatments, and failed to maintain proper patient records with respect to patients A, B and C. The Hearing Committee did not sustain the charges of practicing with negligence or incompetence on more than one occasion, nor did the Hearing Committee sustain any of the charges with respect to patient D. As to penalty, the Hearing Committee revoked petitioner's license to practice medicine.

Petitioner thereafter appealed the Hearing Committee's determination to the Administrative Review Board for Professional Medical Conduct (hereinafter ARB), which sustained the Hearing Committee's finding of guilt. Additionally, the ARB found that there was sufficient proof in the record to sustain the charge of practicing with negligence on more than one occasion. The ARB also affirmed the penalty of revocation and, further, imposed upon petitioner a $10,000 fine, prompting petitioner to commence this proceeding pursuant to CPLR article 78 to challenge the ARB's determination.

It is well settled that where, as here, we are called upon to review a determination rendered by the ARB, "our inquiry is limited to whether such determination 'was made in violation

of lawful procedure, was affected by an error of law, was arbitrary and capricious or was an abuse of discretion'" (*Matter of Glassman v Commissioner of Dept. of Health of State of N. Y.*, 208 AD2d 1060, 1061, *lv denied* 85 NY2d 801, quoting *Matter of Wapnick v New York State Bd. for Professional Med. Conduct*, 203 AD2d 728, 729; *see, Matter of Brown v New York State Dept. of Health*, 235 AD2d 957, 957-958, *lv denied* 89 NY2d 814). Applying that standard to the matter before us, it is apparent that the ARB's determination must be confirmed.

During the course of the administrative hearing Jerome Greenholz, also an osteopathic physician, testified on behalf of the BPMC. After reviewing petitioner's office records for the patients at issue, Greenholz testified that petitioner engaged in a practice of ordering tests that were not medically indicated. Specifically, with respect to patient A, Greenholz testified that the Cybex muscle testing, tympanogram, arterial and venous studies, thermogram, four magnetic resonance imaging procedures (hereinafter MRI) and sonogram were not warranted by the patient's history or physical examination and that the ordering of the latter two procedures under the circumstances presented constituted a deviation from generally accepted medical practices. Additionally, Greenholz noted that petitioner failed to record the results of certain tests in patient A's records. As to patient B, Greenholz opined that there was no medical indication for the Cybex muscle testing, tympanogram, thermogram, arterial and venous studies, six MRIs and two sonograms ordered by petitioner and that the ordering of such tests constituted a deviation from generally accepted medical practices. Greenholz also noted that petitioner again failed to record the results of certain tests in the patient's record. Finally, with respect to patient C, Greenholz testified that the tympanogram (for which no results were recorded in patient C's chart) and four MRIs were not medically indicated and that petitioner's care and treatment of patient C deviated from accepted medical practices.

The foregoing testimony plainly establishes that petitioner ordered excessive tests and treatments in violation of Education Law § 6530 (35) and, further, that by failing to record certain of those test results, failed to maintain proper patient records in violation of Education Law § 6530 (32). Such testimony also is sufficient to sustain the charge of practicing with negligence on more than one occasion and practicing the profession fraudulently, particularly in view of the proof that petitioner referred patients to Modern Thermographic Testing, Inc., a firm in which he had a financial interest prior to Janu-

ary 1994, for unwarranted thermography studies. To the extent that petitioner and his experts offered testimony to the contrary, such testimony merely raised a credibility issue for the ARB to resolve and, in so doing, the ARB was free to credit the testimony of the BPMC's expert over that of petitioner's experts (*see generally, Matter of Hachamovitch v State Bd. for Professional Med. Conduct*, 206 AD2d 637, 638, *lv denied* 84 NY2d 809).

Nor are we persuaded that the penalty imposed is too severe. "Whether the penalty of revocation of petitioner's license should be sustained depends upon whether it is so incommensurate with the offense as to shock one's sense of fairness" (*Matter of Adler v Bureau of Professional Med. Conduct*, 211 AD2d 990, 993). Here, the evidence established that petitioner, *inter alia*, repeatedly engaged in a pattern of ordering tests and treatments that were not medically indicated and failed to maintain appropriate patient records. Under such circumstances, we cannot say that the penalty imposed by the ARB is not supported by the record as a whole (*see, Matter of Capote v DeBuono*, 241 AD2d 570, 571-572). Petitioner's remaining contentions, including his assertion that he was denied the right of cross-examination and that the underlying determination was based entirely upon inadmissible hearsay, are either not properly before this Court or have been examined and found to be lacking in merit.

Cardona, P. J., Yesawich Jr., Peters and Carpinello, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.