■ In the Matter of DIEGO A. DIAZ, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [893 NYS2d 309]—

Kavanagh, J.

Prior to meeting with a patient on March 21, 2005 to discuss with her the results of a colonoscopy and pathology exam, petitioner, a physician licenced to practice medicine in New York, briefly reviewed the reports of both exams and, based on that reading, mistakenly concluded that petitioner had been found to have cecal carcinoma or cancer in her colon.* In fact, the reports, when read together, found that a "proximal rectal mass: well-differentiated adenocarcinoma" had been detected in the patient's *rectum*. After conferring with the patient and informing her of his understanding of the results of these examinations, petitioner consulted with a surgeon and requested that a surgical procedure be performed on the patient to remove the cancer from her colon. As part of the patient's preparation for this surgical procedure, petitioner arranged for her to undergo an emergency CT scan. Several days after the CT scan had been performed, the patient began experiencing persistent nausea and vomiting and, as a result, was admitted on an emergency basis to the hospital. Two days later, on April 6, 2005, the surgical procedure to remove the cancer from the patient's colon was begun even though reports of the colonoscopy and pathology exams were not part of her hospital file. When, during the procedure, a cancerous tumor was not located in the patient's colon, the surgeon contacted petitioner, told him of his findings and requested that petitioner immediately forward to him the reports concerning the patient's colonoscopy examination. After reading the reports, the surgeon continued to operate on the

---

* The colonoscopy report consisted of four pages with the first page briefly summarizing the findings of the exam and making appropriate recommendations. The pathology report was a one-page document that contained a final diagnosis of "proximal rectal mass: well-differentiated adenocarcinoma."

patient, located the cancerous lesion in the patient's rectum and removed it. Twelve hours after the surgery had first begun, the patient was removed to a recovery room where she "developed significant wheezing, cessation of breathing [and] then a cardiopulmonary arrest" that caused her death.

Petitioner was subsequently charged with being grossly negligent and committing negligence on more than one occasion in the quality of the medical care he provided this patient. He was also charged with failing to maintain adequate records regarding her treatment from the time he initially consulted with the patient regarding the colonoscopy exam on March 31, 2005 until the surgical procedure to remove the cancer was performed on April 6, 2005. After a hearing, a Hearing Committee of respondent absolved petitioner of gross negligence, but found that he had, as charged, been negligent on more than one occasion in regard to his treatment of this patient and with failing to maintain accurate medical records regarding her treatment and condition. Based on these findings, the Hearing Committee voted to suspend petitioner's license for one year, but stayed the suspension for the entire period. Petitioner commenced this CPLR article 78 proceeding challenging the Hearing Committee's findings as not being supported by substantial evidence and claiming that, in part, it was based on an allegation of negligence that was not specified in the statement of charges filed against him.

As for petitioner's contention that the Hearing Committee partially based its findings that he was negligent on a charge that had not been filed against him, he points to the Hearing Committee's reference to the CT scan and its conclusion that the contents of the report of this diagnostic procedure should have prompted petitioner to reconsider his diagnosis as to the location of the patient's cancer. Petitioner argues that the statement of charges, as written, did not put him on notice that his interpretation of the CT scan would be considered by the Hearing Committee in regard to the claim that he was negligent in the treatment he rendered this patient.

However, a statement of charges, to be legally sufficient, need not spell out in detail every act or circumstance that will be considered in arriving at a finding that a physician was negligent in the care he or she provided a patient. To be legally sufficient, the statement need only "apprise the party whose rights are being determined of the charges against him [or her]" so that he or she can respond to them and prepare an adequate defense (*Matter of Block v Ambach*, 73 NY2d 323, 333 [1989]). In that regard, it must set forth "the substance of the alleged

professional misconduct and shall state clearly and concisely the material facts *but not the evidence by which the charges are to be proved*" (Public Health Law § 230 [10] [b] [emphasis added]). Here, the content of the statement of charges clearly put petitioner on notice that the claim of professional misconduct made against him revolved around his failure to correctly read the results of the colonoscopy and pathology exams. As for the CT scan, expert testimony heard by the Hearing Committee concluded that petitioner's negligence was compounded by his failure to respond appropriately to the CT scan's findings and recognized that, when read with other reports filed in connection with the patient's care, it did not conclusively confirm petitioner's diagnosis as to the location of the patient's cancer. As such, the CT scan and petitioner's response to it in the context of the treatment he rendered this patient constitute evidence that was fairly relied upon by the Hearing Committee to support its finding that he was guilty of professional misconduct (*see Matter of Tsirelman v Daines*, 61 AD3d 1128, 1130 [2009], *lv denied* 13 NY3d 709 [2009]).

Petitioner also argues that the Hearing Committee's finding that he committed repeated acts of negligence in regard to this patient's care was based on a single misreading of the reports prepared regarding her colonoscopy, and decisions he made during his treatment of this patient that were based on this single act of negligence cannot constitute separate and discrete acts of negligence. For a physician to be found to have practiced negligently on more than one occasion, there must be a finding of "distinct events of some duration during which an act or acts amounting to ordinary negligence occur" (*Matter of Yong-Myun Rho v Ambach*, 74 NY2d 318, 322 [1989]; *see* Education Law § 6530 [3]; *Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d 796, 798 [1999], *lv denied* 95 NY2d 756 [2000]). Here, as petitioner has acknowledged, his misreading of the results of the colonoscopy exam and his conclusion as to the location of the patient's cancer constituted an act of professional negligence. However, his negligence did not end there. It was compounded by entries he made in the patient's chart after her admission to the hospital that she had "colon cancer" and that an "apple core lesion" had been located in her colon. In addition, his failure to insure that the colonoscopy and pathology reports were included in the patient's medical records upon her admission to the hospital and prior to her undergoing the surgical procedure were additional acts of negligence that constituted substantial evidence for the Hearing Committee's final determination as to this charge (*see Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d at 798; *Matter of Bogdan*

*v New York State Bd. for Professional Med. Conduct,* 195 AD2d 86, 89 [1993], *appeal dismissed and lv denied* 83 NY2d 901 [1994]).

The Hearing Committee also concluded that petitioner was guilty of professional neglect in failing to insure that the medical records maintained on behalf of this patient "accurately reflect[ed her] evaluation and treatment" (Education Law § 6530 [32]). Not only did petitioner make entries in the patient's medical chart that significantly misstated her condition, but he failed in his professional obligation as petitioner's treating physician to insure that her hospital chart contained all relevant reports and data regarding her condition prior to her surgery being performed. Since neither the colonoscopy nor the pathology reports had been forwarded by petitioner or were part of the patient's medical chart prior to the surgical procedure being performed, the Hearing Committee's determination as to this charge was also supported by substantial evidence (*see Matter of Ostad v New York State Dept. of Health,* 40 AD3d 1251, 1252 [2007]; *Matter of Ticzon v New York State Dept. of Health,* 305 AD2d 816, 818 [2003]).

Cardona, P.J., Mercure, Spain and Malone Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.