■ In the Matter of YURY PATIN, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [911 NYS2d 184]—

Peters, J.P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respon-

---

dent which, among other things, revoked petitioner's license to practice medicine in New York.

Petitioner, a physician licensed to practice internal medicine in New York, was charged by the Bureau of Professional Medical Conduct (hereinafter BPMC) with 32 specifications of professional misconduct in relation to his care and treatment of seven patients (hereinafter patients A through G). The charges included negligence and incompetence on more than one occasion, practicing medicine in a fraudulent manner, willfully making or filing false reports, failing to maintain accurate medical records, ordering unwarranted tests and treatment, and engaging in conduct evincing moral unfitness. Although a Hearing Committee of respondent found insufficient proof to sustain one charge of fraudulent practice (relating to patient A) and two charges of false reporting (relating to patients A and E), it ultimately sustained 28 of the 32 specifications. Petitioner's license to practice medicine in New York was revoked and a $50,000 fine was imposed. Petitioner then commenced this CPLR article 78 proceeding challenging that determination.

Upon review, our inquiry is limited to assessing whether the Hearing Committee's determination is supported by substantial evidence (*see Matter of D'Angelo v State Bd. for Professional Med. Conduct*, 66 AD3d 1154, 1155 [2009]; *Matter of Ostad v New York State Dept. of Health*, 40 AD3d 1251, 1252 [2007]). Furthermore, "the assessment and resolution of conflicting evidence and witness credibility are within the exclusive province of the Hearing Committee" (*Matter of Chamberlin v New York State Bd. for Professional Med. Conduct*, 34 AD3d 1097, 1098 [2006] [internal quotation marks and citations omitted]; *see Matter of Forester v State Bd. for Professional Med. Conduct*, 36 AD3d 1127, 1128 [2007], *lv denied* 8 NY3d 812 [2007]; *Matter of Yoonessi v State Bd. for Professional Med. Conduct*, 2 AD3d 1070, 1073 [2003], *lv denied* 3 NY3d 607 [2004]). Guided by these principles, we conclude that each charge sustained by the Hearing Committee is supported by substantial evidence.

The Hearing Committee's findings of negligence on more than one occasion, incompetence on more than one occasion and, as to each of the seven patients, the ordering of unwarranted tests are amply supported by record evidence.[1] Based upon his review of the medical records of the patients at issue, Stephen Moshman, a board-certified physician in the field of internal medicine, testified in detail as to petitioner's failure to obtain proper patient histories and to adequately perform and docu-

---

**1.** Petitioner does not challenge the findings that he failed to maintain accurate medical records with respect to each of the seven patients.

ment physical examinations. He further explained that petitioner's medical records with respect to each of the patients revealed a pattern of solely stating a diagnostic conclusion with little or no elaboration of symptoms, history or follow-up and unaccompanied by any physical findings.[2] According to Moshman, since the missing information was critical to proper patient care and treatment, petitioner's omissions in this regard deviated significantly from accepted medical standards of care. Evidence was also presented that petitioner misread tests concerning patients B, C, E and F, neglected to make appropriate referrals and failed to follow-up and adequately address a number of critical issues, such as patient A's potential cardiac problems, patient C's breast abnormality, patient E's significant hypercholesterolemia[3] and patient F's torn meniscus. The Hearing Committee concluded that, with respect to each of the seven patients, petitioner failed to provide treatment in a rational, systematic and comprehensive manner.

Moshman also concluded, and the Hearing Committee found, that petitioner ordered multiple diagnostic tests for each patient, often without first performing a preliminary work-up, that were not medically justified.[4] Furthermore, some of these tests were repeatedly ordered by petitioner, despite the fact that the initial tests yielded normal results and the patients' symptoms had not changed. Of particular import was the fact that petitioner ordered relatively invasive nerve conduction tests for each of the seven patients without performing a complete neurological examination and in the absence of any physical findings in the patients' medical records indicating the need for such a procedure. Relatedly, the Hearing Committee concluded that, given that petitioner was treating most of the

---

**2.** Since inadequate medical records will support a finding of negligence where " 'there is a relationship between inadequate record-keeping and patient treatment' " (*Matter of Youssef v State Bd. for Professional Med. Conduct*, 6 AD3d 824, 825 [2004], quoting *Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, 89 [1993], *appeal dismissed and lv denied* 83 NY2d 901 [1994]), the scant nature of petitioner's records coupled with Moshman's testimony regarding the import of the missing information provides an additional basis for sustaining the charge of negligence on more than one occasion (*see Matter of Tulier-Pastewski v State Bd. for Professional Med. Conduct*, 13 AD3d 918, 920 [2004]; *Matter of Youssef v State Bd. for Professional Med. Conduct*, 6 AD3d at 825; *Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d 796, 798 [1999], *lv denied* 95 NY2d 756 [2000]).

**3.** Hypercholesterolemia is the presence of excess cholesterol in the blood.

**4.** These tests included, among others, nerve conduction studies, MRIs, video electro nystagmometry tests, pulmonary function tests, Doppler exams and echocardiograms.

seven patients for neurological problems, his admitted failure to perform a complete neurological examination on any of these patients constituted egregious conduct.

Petitioner did not present an expert and, although conceding that his medical records were deficient in various respects, testified that he did in fact conduct appropriate patient histories and physical examinations, had justifications for the numerous diagnostic tests he ordered and/or performed and adequately treated all seven patients. The Hearing Committee deemed Moshman's testimony to be highly credible and, finding petitioner to be "evasive on questioning" and neither "credible [n]or believable," rejected petitioner's attempts to justify his actions as well as his testimony that the omitted patient histories and examinations were actually performed. In view of the foregoing and deferring to the Hearing Committee on issues of credibility (*see Matter of Sookhu v Commissioner of Health of State of N.Y.*, 31 AD3d 1012, 1014 [2006]; *Matter of Pearl v New York State Bd. for Professional Med. Conduct*, 295 AD2d 764, 765 [2002], *lv denied* 99 NY2d 501 [2002]; *Matter of Singer v Novello*, 288 AD2d 777, 778 [2001]), we find that substantial evidence supports the Hearing Committee's determination sustaining the charges of negligence on more than one occasion, incompetence on more than one occasion and ordering of unwarranted tests.

We reach a similar conclusion with respect to the charges of fraud and false billing. A finding of fraudulent practice requires "proof of either an intentional misrepresentation or concealment of a known fact, [and] the intent or knowledge element may be inferred from the surrounding circumstances" (*Matter of Steckmeyer v State Bd. for Professional Med. Conduct*, 295 AD2d 815, 817 [2002] [citation omitted]; *see Matter of Aptaker v Administrative Review Bd. for Professional Med. Conduct*, 60 AD3d 1160, 1163 [2009], *lv denied* 12 NY3d 713 [2009]; *Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d 927, 929 [2007], *lv denied* 10 NY3d 701 [2008]). Furthermore, there is no requirement that the fraud cause an injury to the patient (*see Matter of Youssef v State Bd. for Professional Med. Conduct*, 6 AD3d at 826; *Matter of Mayer v Novello*, 303 AD2d 909, 910 [2003]).

The Hearing Committee found, based upon Moshman's testimony regarding the appearance of certain billing codes in the records of patients B, C, D, E, F and G and the lack of a medical record in the respective patient's file to reflect that the corresponding procedure was actually performed, as well as various admissions made by petitioner, that petitioner billed the medical insurers of those patients for diagnostic tests that were

never performed. It also rejected petitioner's claims that, for the most part, these were simply billing errors. In light of these findings and the pattern of the purported billing errors, the Hearing Committee could reasonably infer petitioner's knowledge that the bills were false and that he willfully intended to deceive the patients' medical insurers (*see Matter of Tsirelman v Daines*, 61 AD3d 1128, 1130 [2009], *lv denied* 13 NY3d 709 [2009]; *Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d 796, 799-800 [1999], *lv denied* 95 NY2d 756 [2000]; *Matter of Post v State of N.Y. Dept. of Health*, 245 AD2d 985, 987 [1997]). Moreover, the documented pattern of unwarranted procedures provided an independent basis for the findings that petitioner engaged in fraudulent practice by exposing his patients to unnecessary and/or excessive medical treatments and billing their insurers for those procedures (*see Matter of Tsirelman v Daines*, 61 AD3d at 1130-1131; *Matter of Steckmeyer v State Bd. for Professional Med. Conduct*, 295 AD2d at 818). Thus, the evidence presented and the inferences reasonably flowing therefrom provide ample support for the sustained charges of fraudulent medical practice and filing of false reports.

Nor do we find any basis to disturb the Hearing Committee's determination to sustain the charge of moral unfitness. The evidence of, among other things, petitioner's fraudulent billing practices provides substantial evidence supporting this charge, since such conduct demonstrates deliberate deceit which "violat[es] the trust the public bestows on the medical profession and/or violat[es] the medical profession's moral standards" (*Matter of Prado v Novello*, 301 AD2d 692, 694 [2003] [internal quotation marks and citations omitted]; *see Matter of Conteh v Daines*, 52 AD3d 994, 996 [2008]). Finally, given petitioner's negligent behavior, his consistent failure to maintain adequate medical records for the seven patients at issue and his repeated fraudulent practice, we cannot say that the penalty of license revocation is "so disproportionate to the underlying offenses as to be shocking to one's sense of fairness" (*Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d at 930; *see Matter of Youssef v State Bd. for Professional Med. Conduct*, 6 AD3d at 826-827; *Matter of Prado v Novello*, 301 AD2d at 694).

Rose, Lahtinen, McCarthy and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.