■ In the Matter of DAVID A. RIGLE, Petitioner, v RICHARD F. DAINES, as Commissioner of Health, et al., Respondents. [910 NYS2d 299]—

Lahtinen, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, a forensic pathologist, was licensed to practice medicine in New York in 1990 and, since the mid-1990s, he has limited his practice to providing consultation services as a medical expert. He has had several medical conduct issues through the years, including a voluntary temporary suspension of his medical license in 1991 followed by two years of probation, a consent agreement limiting the scope of his practice in 1998 and a six-month suspension in 2007. In 2008, the Bureau of Professional Medical Conduct (hereinafter BPMC) filed a statement of charges against petitioner alleging cocaine dependency, habitual abuse of alcohol, habitual abuse of the prescription drug hydrocodone, a psychiatric condition impairing his ability to practice medicine, neglect to pay a civil fine of $2,500 that had been directed in an earlier order of a Hearing Committee of respondent State Board for Professional Medical Conduct, and failure to report self-prescribed medication in violation of a prior voluntary agreement with the Office of Professional Medical Conduct.

Following a hearing, the Committee dismissed the charge alleging cocaine dependency, but sustained the remaining charges and, as a penalty, suspended petitioner's license for two years. The suspension was stayed upon the condition that petitioner comply with various terms of probation. The parties sought review by respondent Administrative Review Board for Professional Medical Conduct (hereinafter ARB), which affirmed the Committee's findings regarding professional misconduct. However, the ARB unanimously overturned the Committee's penalty and, instead, revoked petitioner's license to practice medicine. Petitioner then commenced the current proceeding.

We are unpersuaded by petitioner's initial argument that various alleged procedural and evidentiary errors resulted in a hearing that was not fair and violated due process. Considerable leeway regarding the rules of evidence is permitted in administrative proceedings, and the requirements of due process are not as exacting in such proceedings as in criminal cases (*see Matter of Smith v New York State Dept. of Health*, 66 AD3d 1144, 1147 [2009]; *Matter of Tsirelman v Daines*, 61 AD3d 1128, 1130-1131 [2009], *lv denied* 13 NY3d 709 [2009]). "To warrant

annulment, an erroneous evidentiary ruling must 'infect the entire proceeding with unfairness' " (*Matter of Morfesis v Sobol*, 172 AD2d 897, 897 [1991], *lv denied* 78 NY2d 856 [1991], quoting *Matter of Ackerman v Ambach*, 142 AD2d 842, 845 [1988], *affd* 73 NY2d 323 [1989]). Petitioner contends that he did not have sufficient notice to permit him to prepare for the hearing. The charges were served upon him on January 28, 2008, a prehearing conference was conducted on February 20, 2008, and the hearing commenced on February 29, 2008. This notice complied with the statutory requirement (*see* Public Health Law § 230 [10] [former (d)]), and the Administrative Law Judge (hereinafter ALJ) did not abuse his discretion in refusing to adjourn the hearing (*see Matter of Kosich v New York State Dept. of Health*, 49 AD3d 980, 982-983 [2008], *appeal dismissed* 10 NY3d 950 [2008]). Disclosure consistent with the pertinent regulation was permitted (*see* 10 NYCRR 51.8). The ALJ's decision to rule on the admissibility of certain exhibits at the prehearing conference and to provide those exhibits to Committee members before the hearing did not violate due process. The exhibits were provided to petitioner in advance of the conference, he had an opportunity to be heard regarding the exhibits, and he could have submitted his own exhibits.

The ALJ's various evidentiary and procedural rulings, while not error free, nevertheless did not so infect the proceeding as to deprive petitioner of a fair hearing. Review of the record reflects that petitioner had ample opportunity to cross-examine witnesses produced by BPMC as well as present his own case. The errors that he alleged occurred, considered cumulatively, fail to establish that he did not receive a fair hearing (*see generally Matter of Kosich v New York State Dept. of Health*, 49 AD3d at 982-984).

The record does not support petitioner's assertion that two of the Committee members were biased against him. "Committee members are presumed to be free from bias [and] [p]etitioner has the burden of providing factual support demonstrating bias and proof that the administrative outcome flowed from such bias" (*Matter of Khan v New York State Dept. of Health*, 17 AD3d 938, 939 [2005] [internal quotation marks and citations omitted]; *see Matter of Maglione v New York State Dept. of Health*, 9 AD3d 522, 523 [2004]). The two members at issue were individually questioned at the commencement of the hearing and each affirmatively stated an ability to be impartial. There is nothing in the record beyond speculation revealing any reason not to credit these representations by the Committee members.

Next, we consider petitioner's argument that there was insufficient evidence to support the ARB's determination upholding the charges that petitioner habitually abused alcohol and hydrocodone. The ARB's determination "will not be disturbed if it has a rational basis and is factually supported" (*Matter of Shapiro v Administrative Review Bd. of the State Bd. for Professional Med. Conduct*, 71 AD3d 1241, 1242 [2010] [internal quotation marks and citation omitted]; *see Matter of Singh v New York State Dept. of Health Bd. of Professional Med. Conduct*, 74 AD3d 1391, 1392-1393 [2010]). Our review is limited and "we do not resolve credibility issues or weigh the testimony of expert witnesses, for those issues are solely within the province of the administrative factfinder" (*Matter of D'Souza v New York State Dept. of Health*, 68 AD3d 1562, 1563 [2009] [internal quotation marks and citations omitted]).

Petitioner's documented history of acute alcohol problems began in the early 1990s when, as an assistant medical examiner, he arrived intoxicated at a death scene. He voluntarily surrendered his license because of his alcohol problem and, during treatment, was diagnosed with a severe alcohol-dependent condition. After a period of probation, he admittedly returned to drinking, which resulted in additional alcohol-related incidents. More recently, he was involuntarily hospitalized after his sister found him highly intoxicated and threatening self-harm. He failed to follow through on recommended treatment. A physician who evaluated petitioner and testified at the hearing opined that petitioner "chronically and repeatedly engaged in a pattern of excessive and problematic use of alcohol" and that his actions were consistent with alcohol dependence. The ARB found this opinion, which had a factual basis in the record, to be credible and did not credit the explanations offered by petitioner. This proof is adequate to uphold the finding regarding habitual alcohol abuse.

There is also sufficient evidence in the record regarding petitioner's habitual use of the prescription drug hydrocodone. While the total pills purchased by petitioner over a 730-day period were within the therapeutically prescribed regimen when considered over the entire time, there were periods during this time of excessive purchases. Significantly, petitioner received prescriptions from multiple physicians and used multiple pharmacies to fill those prescriptions. As observed by a physician who testified for BPMC at the hearing, petitioner's behavior of rotating pharmacies and obtaining prescriptions from more than one doctor (without informing his other doctors) was inappropriate, manipulative, "[v]ery suggestive of

chemical dependency," and reflected an effort to "stay[ ] off the radar." The ARB's determination has factual support and was not arbitrary.

Finally, we turn to the assertion that the ARB abused its discretion by revoking petitioner's license. "The ARB is empowered to impose a harsher penalty than the Committee, and such penalty will only be disturbed if it is so disproportionate to the offense that it is shocking to one's sense of fairness" (*Matter of Cohen v New York State Dept. of Health*, 65 AD3d 791, 793 [2009] [citations omitted]; *see Matter of Chatelain v New York State Dept. of Health*, 48 AD3d 943, 944 [2008]). Hence, our review is limited and, while a penalty in the nature fashioned by the Committee would have been appropriate, the harsher penalty imposed by the ARB does not rise to the high level necessary for us to set it aside (*cf. Matter of Addei v State Bd. for Professional Med. Conduct*, 278 AD2d 551, 553 [2000]), particularly in light of petitioner's less than laudable disciplinary history, his lack of cooperation and candor, his apparent disinclination to seek help, and his repeated failure to adhere to a regimen directed at addressing his problem (*see Matter of Nisi v New York State Dept. of Health*, 70 AD3d 1211, 1214 [2010]; *Matter of Chatelain v New York State Dept. of Health*, 48 AD3d at 944).

Petitioner's remaining claims have been considered and are unavailing.

Peters, J.P., Rose, McCarthy and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.