■ In the Matter of MARIA-LUCIA ANGHEL, Petitioner, v RICHARD F. DAINES, as Commissioner of Health, et al., Respondents. [927 NYS2d 710]—

Rose, J.

Petitioner, a physician board-certified in anesthesiology and pain management and licensed to practice medicine in New York, was charged by the Bureau of Professional Medical Conduct (hereinafter BPMC) with 25 specifications of professional misconduct, including fraudulent practice, negligence on more than one occasion, incompetence on more than one occasion, gross negligence, willful failure to comply with federal law and regulations, excessive tests and treatment and failure to maintain records. The charges related to petitioner's treatment of seven patients (hereinafter patients A through G) and her operation of a laboratory at her offices. Following extensive hearings on the matter, respondent Hearing Committee of the State Board for Professional Medical Conduct sustained each specification except for the charge of incompetence, revoked petitioner's license to practice medicine in New York and imposed a $240,000 fine. Petitioner then commenced this CPLR article 78 proceeding challenging that determination.

Initially, we are unpersuaded by petitioner's assertions that various evidentiary and procedural errors deprived her of her right to a fair hearing and due process. A petitioner in an administrative proceeding is not entitled to all of the due process protections that are afforded to a defendant in a criminal action and the rules of evidence are not strictly applied (*see*

*Matter of Rigle v Daines,* 78 AD3d 1249, 1250 [2010], *appeal dismissed* 16 NY3d 825 [2011]; *Matter of D'Souza v New York State Dept. of Health,* 68 AD3d 1562, 1563-1564 [2009]; *Matter of Conteh v Daines,* 52 AD3d 994, 995 [2008]).

Petitioner first challenges the admission of BPMC's exhibit No. 12, a CD containing a spreadsheet data file detailing claims submitted by petitioner to United Healthcare, the administrator of a healthcare benefit plan, for services she billed from 1994 to 2007 for patients C through G, and exhibit No. 12A, a hard copy printout of the spreadsheet. We find no record support for petitioner's contentions that the CD and the spreadsheet that were admitted into evidence at the hearing—and the spreadsheet that is now included in the record on appeal—are illegitimate and/or uncertified copies or that BPMC is withholding copies of the CD. Michael Stephano, a United Healthcare employee, testified that he created the spreadsheet using data stored in the regular course of business in United Healthcare's database and certified that the data file was a true, complete and accurate record of the claims submitted by petitioner. Although copies of the original CD were apparently made and provided to petitioner and the Administrative Law Judge (hereinafter ALJ) which, when viewed on the ALJ's computer, did not appear to be identical to the original CD, the Committee considered the original CD in evidence, which was also projected onto a screen during the hearing.

We also reject petitioner's challenge to the admission of this evidence on the ground that the spreadsheet constituted inadmissible hearsay and was not sufficiently reliable or accurate. Although it was discovered during the hearing that the spreadsheet contained certain date and code description errors, these errors were, for the most part, not substantive and affected only a small percentage of the data on the spreadsheet. Also, the Committee was made aware of the error by petitioner's cross-examination of the witnesses and the admission of a clarifying affidavit from Stephano, and the Committee had before it copies of the actual electronic claim submissions that petitioner made to United Healthcare from 1999 until 2004, substantiating the entries in the spreadsheet for that period. As the exhibits were properly certified and authenticated, and given the considerable leeway afforded the admission of evidence at the hearing, we discern no abuse of discretion in the ALJ's decision to admit them.

Petitioner also has not shown that she was deprived of a fair hearing and due process by any other of the ALJ's various rulings. The ALJ did not abuse his discretion in granting BPMC's

motion to withdraw patient A's testimony without striking all of the charges related to patient A, as patient A's medical records supported the remaining charges related to her. The ALJ also acted within the bounds of his authority when he denied petitioner's motion for a mistrial based upon patient B's failure to return to testify after evidence surfaced calling into question the veracity of a limited portion of her testimony. Petitioner was able to introduce evidence indicating that patient B may have misrepresented her credentials during the hearing and the ALJ advised the Committee that she did not respond to a subpoena. In sum, the claimed evidentiary errors were not so severe as to infect the entire proceeding with unfairness given petitioner's full opportunity to contest the evidence against her and present her own case (*see Matter of Rigle v Daines*, 78 AD3d at 1251; *Matter of Tsirelman v Daines*, 61 AD3d 1128, 1130-1131 [2009], *lv denied* 13 NY3d 709 [2009]).

Petitioner also claims that her due process rights were violated because BPMC did not offer her an additional interview to allow her to respond to allegations concerning patients C through G before charges relating to those patients were investigated and added (*see* Public Health Law § 230 [10] [a] [iii]). We cannot agree. It is sufficient that petitioner received two preinvestigatory interviews regarding allegations relating to patients A and B, and BPMC offered petitioner an additional interview regarding the other patients before the hearing was convened, which she declined (*see Matter of Galin v DeBuono*, 259 AD2d 788, 789 [1999], *lv denied* 93 NY2d 812 [1999]; *Matter of Gupta v De Buono*, 229 AD2d 58, 61-62 [1997]). In any event, petitioner's due process rights were protected by her receipt of the detailed amended statement of the charges against her (*see Matter of Weg v DeBuono*, 269 AD2d 683, 689 [2000], *lv denied* 94 NY2d 764 [2000]; *Matter of Clausen v New York State Dept. of Health*, 232 AD2d 917, 919 [1996]; *Matter of Gupta v De Buono*, 229 AD2d at 62). In addition, petitioner was provided adequate time to prepare for the hearing, and the Committee's refusal to grant her a second adjournment was not unreasonable and did not deprive her of due process (*see Matter of Laverne v Sobol*, 149 AD2d 758, 761-762 [1989], *lv denied* 74 NY2d 610 [1989]). We have also examined petitioner's claims that BPMC engaged in misconduct throughout the pendency of the proceedings against her and found them to be wholly unsubstantiated.

Turning to the merits, our review of the Committee's decision is limited to determining whether it is supported by substantial evidence (*see Matter of D'Angelo v State Bd. for Professional*

*Med. Conduct*, 66 AD3d 1154, 1155 [2009]; *Matter of Tsirelman v Daines*, 61 AD3d at 1129). In making this determination, we will defer to the Committee's credibility determinations and resolution of conflicting evidence (*see Matter of Patin v State Bd. for Professional Med. Conduct*, 77 AD3d 1211, 1212 [2010]; *Matter of Ostad v New York State Dept. of Health*, 40 AD3d 1251, 1252 [2007]).

Substantial evidence supports the Committee's decision to sustain the specification alleging that petitioner willfully failed to comply with federal law and regulations governing the practice of medicine (*see* Education Law § 6530 [16]). Namely, the Clinical Laboratory Improvement Amendments of 1988 (hereinafter CLIA) and its regulations require physicians to obtain a CLIA certificate before operating a physician office laboratory (hereinafter POL) (*see* 42 USC § 263a; 42 CFR part 493). The evidence presented at the hearing established that petitioner operated a POL between 1995 and 2003 without obtaining the required certification under CLIA. Although petitioner testified that she was not aware of the certification requirement until she became the subject of an investigation in 2003, substantial evidence supports the Committee's conclusion that petitioner's failure to comply with CLIA was, in fact, willful. Petitioner's knowledge of her obligation to obtain CLIA certification for her POL can be inferred from the fact that, prior to opening her own medical office in 1995, petitioner shared office space with her brother, who is also a physician, utilized his CLIA-certified POL to run blood tests on patients on the same type of equipment that petitioner later used in her POL and was listed on his CLIA laboratory personnel report as a technical consultant, a position responsible for ensuring regulatory compliance. Moreover, while petitioner billed patient A and patients C through F for blood tests performed in her POL, she typically sent patient G to an outside laboratory. It is telling that patient G was the only patient who was insured by Medicare, which, unlike other insurance providers, would have required petitioner to provide her CLIA certification number and would not have reimbursed petitioner for in-office lab work without a CLIA certification. Petitioner's behavior in disposing of all of her lab records and equipment when she was informed about a possible CLIA violation also supports a finding that her failure to comply with federal law and regulations was willful. Thus, the record reveals substantial evidence to sustain the specification alleging fraudulent practice based upon petitioner's operation of her POL (*see* Education Law § 6530 [2], [16]).

Ample record evidence also supports the Committee's find-

ings of fraudulent practice as to all seven patients and excessive tests and treatment as to patient A and patients C through G (*see* Education Law § 6530 [2], [35]). Fraudulent practice may be established by proof of an intentional misrepresentation or the concealment of a known fact, and intent or knowledge may be inferred from the surrounding circumstances (*see Matter of Patin v State Bd. for Professional Med. Conduct*, 77 AD3d at 1214; *Matter of Ross v State Bd. for Professional Med. Conduct*, 45 AD3d 927, 929 [2007], *lv denied* 10 NY3d 701 [2008]). Here, the testimony and the medical evidence in the record established that petitioner had engaged in a pattern of billing fraud over a period of several years. Petitioner routinely took blood draws from patient A and patients C through G.* BPMC's expert, Stephan Petranker, a board-certified anesthesiologist and a specialist in pain management, reviewed those patients' medical records and testified that the frequent lab tests were not warranted by the patients' histories or physical examinations. Except for patient G, petitioner ran a blood chemistry panel and a lipid panel—the only two tests that petitioner's equipment could perform—on every sample she obtained. For the lab work she performed, petitioner billed the patients both for the panels and for the individual tests that were included in the panels, a practice that Stephano and Jacqueline Thelian, a certified professional coder, testified was inappropriate and constituted billing for tests not performed. Petitioner also billed each of the seven patients for blood draws via arterial punctures which, according to Petranker, were not justified by the patients' medical records, are rarely performed in typical office practice and are billed at a more expensive rate than vena punctures.

Petitioner also listed diagnoses on the patients' health insurance claim forms—such as volume depletion, chronic pancreatitis, hepatitis and diabetes—which had an insufficient basis in the patients' medical records, presumably to justify the bloodwork and the arterial punctures. In addition, petitioner routinely billed patient A and patients C through F for supplies that she did not use or that were inappropriate for the procedures performed and billed patients A and B for a more comprehensive, and more expensive, exam than the patients' medical records indicated that she had provided to them. There is also evidence that petitioner frequently performed procedures on patients C through G—such as injections, ultrasounds and laboratory testing—for diagnoses that were unsubstantiated by the patients' medical records. There is, therefore, substantial evidence to support the Committee's determination sustaining

---

* Petitioner treated patient B on only one occasion.

the charges of fraudulent practice and excessive tests and treatment (*see Matter of Patin v State Bd. for Professional Med. Conduct*, 77 AD3d at 1212-1215; *Matter of Steckmeyer v State Bd. for Professional Med. Conduct*, 295 AD2d 815, 817-818 [2002]; *Matter of Larkins v DeBuono*, 257 AD2d 714, 715-716 [1999]). As for petitioner's explanations of her billing practices, the Committee found that she was "intentionally deceitful" and wholly lacking in credibility, and we can find no reason to disturb that determination (*see Matter of Shapiro v Administrative Review Bd. of the State Bd. for Professional Med. Conduct*, 71 AD3d 1241, 1243 [2010]; *Matter of Smith v New York State Dept. of Health*, 66 AD3d 1144, 1148 [2009]).

Substantial evidence also supports the Committee's finding of failure to maintain records for each of the seven patients. A physician commits professional misconduct when he or she fails to "maintain a record for each patient which accurately reflects the evaluation and treatment of the patient" (Education Law § 6530 [32]; *see* 8 NYCRR 29.2 [a] [3]), and a medical record ·is inadequate when it "fails to convey objectively meaningful medical information concerning the patient treated to other physicians" (*Matter of Mucciolo v Fernandez*, 195 AD2d 623, 625 [1993], *lv denied* 82 NY2d 661 [1993]; *accord Matter of Maglione v New York State Dept. of Health*, 9 AD3d 522, 525 [2004]). Here, the evidence established that petitioner disposed of medical records after a period of seven years even if she was still treating the patient, and she admitted that she did not keep the old records because she did not think that they were relevant to her present treatment. There is expert testimony, however, establishing that a physician should retain all of a patient's records while the patient remains in his or her care, so that the physician and other physicians can trace the evolution of the patient's treatment. This evidence supports the Committee's finding that petitioner's failure to maintain complete files pertaining to her treatment of patients C through G constituted professional misconduct pursuant to Education Law § 6530 (32). Also, Petranker testified in great detail as to the deficiencies in the medical records of patients A through G. He testified that the records did not indicate that petitioner took a thorough and appropriate medical history from the patients, the records failed to clearly explain the diagnoses and treatments that petitioner provided to the patients—which often had no support in the medical record—and they failed to indicate petitioner's follow-up as to these treatments and diagnoses, where applicable. This testimony provides a substantial basis to sustain the specifications alleging that petitioner failed to maintain adequate medical records as to each of the seven patients (*see Matter of Diaz v*

*State Bd. for Professional Med. Conduct*, 68 AD3d 1565, 1568 [2009]; *Matter of Van Gaasbeek v Chassin*, 198 AD2d 572, 575-576 [1993], *lv denied* 82 NY2d 665 [1994]). To the extent that petitioner's medical expert provided testimony to the contrary, the Committee rejected it and, again, we will defer to the Committee's credibility determination (*see Matter of Patin v State Bd. for Professional Med. Conduct*, 77 AD3d at 1214; *Matter of Tsirelman v Daines*, 61 AD3d at 1129).

We also find that petitioner's destruction of her current patients' old medical records and her failure to maintain accurate medical records, as well as her egregious behavior in subjecting her patients to excessive testing for her own monetary gain and in contravention of the minimum standard of care of a reasonably prudent physician, provide substantial evidence to support the Committee's decision to sustain the charges of negligence on more than one occasion and gross negligence (*see* Education Law § 6530 [3], [4]; *Matter of Youssef v State Bd. for Professional Med. Conduct*, 6 AD3d 824, 825-826 [2004]; *Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d 796, 798-799 [1999], *lv denied* 95 NY2d 756 [2000]; *Matter of Larkins v DeBuono*, 257 AD2d at 715-716).

There is, however, insufficient evidence supporting the factual allegations in the following paragraphs, and we will annul them: (1) paragraphs A.10, C.6.b, D.6.b., E.6.b and F.6.b, to the extent that they alleged that petitioner falsely billed the insurance companies of patient A and patients C through F for her use of individual needles; (2) paragraphs C.11, D.11, E.11, F.11 and G.11, alleging that petitioner falsely billed the insurance companies of patients C through G for high-level comprehensive office visits; (3) paragraphs G.4, H.1, H.3 and H.4, to the extent that they alleged that petitioner performed in-house laboratory testing on patient G's blood; (4) paragraph G.6, alleging that petitioner falsely billed patient G's insurance company for supplies; and (5) paragraph H.4, alleging that petitioner falsely billed the patients' insurance companies for laboratory work performed in another physician's office. These allegations formed a partial basis for specifications 1, 3, 4, 5, 6, 7, 8, 11, 12 and 18. Nevertheless, their annulment does not require reconsideration of the penalty imposed as each of the remaining allegations in those specifications are supported by substantial evidence (*see Matter of Tsirelman v Daines*, 61 AD3d at 1129-1131; *Matter of Okereke v State of New York*, 129 AD2d 373, 377 [1987], *lv denied* 70 NY2d 611 [1987]). Given the extensive pattern of misconduct perpetuated by petitioner, which included pervasive billing fraud from which petitioner presumably

profited, we find that the penalty imposed is not so disproportionate to the offenses that it is shocking to one's sense of fairness (*see Matter of Steckmeyer v State Bd. for Professional Med. Conduct*, 295 AD2d at 817-818; *Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d at 800; *Matter of Larkins v DeBuono*, 257 AD2d at 716).

We have considered petitioner's remaining contentions and find them to be without merit.

Mercure, J.P., Lahtinen, Kavanagh and Garry, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner guilty of paragraphs A.10, C.6.b, C.11, D.6.b., D.11, E.6.b, E.11, F.6.b, F.11, G.4, G.6, G.11, H.1, H.3 and H.4 of the factual allegations; petition granted to that extent; and, as so modified, confirmed.