Matter of Mandelstam v McDonald (2024 NY Slip Op 03785)

Matter of Mandelstam v McDonald

2024 NY Slip Op 03785

Decided on July 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 11, 2024

CV-23-0727
[*1]In the Matter of Arnold Mandelstam, Petitioner,
v
James . McDonald, as Commissioner of Health, et al., Respondents.

Calendar Date:May 28, 2024

Before:Garry, P.J., Egan Jr., Lynch, Fisher and Powers, JJ.

Abrams Fensterman, LLP, Albany (Michael G. Bass of counsel), for petitioner.
Letitia James, Attorney General, New York City (Todd A. Spiegelman of counsel), for respondents.

Garry, P.J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct revoking petitioner's license to practice medicine in New York.
Petitioner is a psychiatrist who was first licensed to practice medicine in this state in 1982. In 2021, respondent Board for Professional Medical Conduct (hereinafter the Board) charged petitioner with willfully harassing, abusing or intimidating a patient, negligence, gross negligence and moral unfitness to practice medicine after two patients — patients A and B — claimed petitioner made inappropriate sexual remarks to them and asked them inappropriate sexual questions. A hearing commenced before an Administrative Law Judge (hereinafter ALJ). Following the first day of the hearing, the Board amended the charges by adding a charge that petitioner failed to maintain adequate medical records. A Hearing Committee of the Board ultimately sustained all five charges and revoked petitioner's medical license. Petitioner appealed to the Administrative Review Board for Professional Medical Conduct (hereinafter ARB), which upheld the Hearing Committee's determination. Petitioner commenced this proceeding challenging the ARB determination.
Where the Hearing Committee's findings have been reviewed by the ARB, our review is limited to analyzing "whether the ARB's determination was arbitrary and capricious, affected by error of law or an abuse of discretion" (Matter of Ogundu v State of N.Y. Dept. of Health, State Bd. for Professional Med. Conduct, 188 AD3d 1469, 1470 [3d Dept 2020] [internal quotation marks and citations omitted]; see Public Health Law § 230-c [4] [a]; [5]). This "inquiry distills to whether the ARB's determination has a rational basis and is factually supported" (Matter of Gutierrez v New York State Bd. for Professional Med. Conduct, 170 AD3d 1342, 1343 [3d Dept 2019] [internal quotation marks and citations omitted]). "Resolution of issues of credibility and the weighing of testimony, expert or otherwise, [are] solely within the province of the ARB" (Matter of Cattani v Shah, 122 AD3d 1099, 1099 [3d Dept 2014] [citations omitted]; see Matter of Khan v New York State Dept. of Health, 96 NY2d 879, 880 [2001]). "[A] finding of negligence is warranted where a physician failed to exercise the care that a reasonably prudent physician would exercise under the circumstances"(Matter of Won Yi v New York State Bd. for Professional Med. Conduct, 226 AD3d 1167, 1168 [3d Dept 2024] [internal quotation marks and citation omitted]). To support a finding of professional misconduct based on negligence, the Board must establish a physician's negligence on more than one occasion, while gross negligence on a particular occasion will support imposition of penalties; gross negligence may be either egregious conduct on a particular occasion or multiple acts of negligence (see Education Law § 6530 [3]-[[*2]4]; Matter of Yong-Myun Rho v Ambach, 74 NY2d 318, 322-323 [1989]; Matter of Lampidis v Mills, 305 AD2d 876, 878 [3d Dept 2003]). A physician's medical records are inadequate when they "fail[ ] to convey objectively meaningful medical information concerning the patient['s] treat[ment] to other physicians" (Matter of Anghel v Daines, 86 AD3d 869, 874 [3d Dept 2011] [internal quotation marks and citation omitted]; see Education Law § 6530 [32]; 8 NYCRR 29.2 [a] [3]).
Here, patient A testified that she went to petitioner to deal with marital issues and after enduring the loss of her brother and the stroke of her mother. During sessions with petitioner, he twice made explicit comments describing her sexual activities, which included profanity. Petitioner further disclosed details of his sex life and marital relations. Patient A abruptly terminated her treatment after she observed him with his hand in his pocket, rubbing his erect penis, while asking questions about her sex life. Patient A's therapist testified that patient A reported these concerns to her, and the therapist's notes corroborate this testimony. An expert for the Board testified that petitioner's use of such language in this context was a "clear" deviation from the standard of care to a "severe" degree. He also testified that petitioner's failure to document the loss of patient A's brother, that patient A had children and that she was taking Adderall (along with prescribing Adderall based on her having attention deficit disorder alone) were deviations from the standard of care.
Patient B had previously sought treatment from petitioner because of childhood sexual abuse and intimacy issues with her husband, and she testified that she went to petitioner for medication only. Like patient A, patient B testified that petitioner disclosed some of the identical personal details regarding his prior sexual activity and marital issues. Petitioner showed patient B pictures of himself, asking her if he looked good. Later, petitioner asked patient B intimate and specific questions regarding her sexual relations with her husband, again using the profanity described by Patient A. He also asked whether she masturbated and commented extensively that she was "wild" and "probably like[d] wild sex." Patient B's therapist testified that the detail sought by petitioner went beyond what was necessary to know if patient B's medication was working effectively. Her therapist said she was concerned petitioner had prescribed specific medication that was contraindicated by her underlying conditions. The Board's expert agreed with the therapist's testimony, and he testified that petitioner breached the standard of care by not adequately explaining his reasons for prescribing medicine to patient B and his dosage changes. The Board's expert reviewed multiple treatment notes, explaining what each lacked. He added that petitioner further erred by providing patient B with prescription quantities for more than one month.
For his part, petitioner testified that he told patient A a personal sexual history story, but that it was a story about his friends having sex, not himself; he testified that he used the story to teach patient A that one who associates with people acting illicitly is not necessarily also acting illicitly. He denied using vulgar language with patient A and testified that he did not masturbate in front of her. As for patient B, he testified that he did discuss sex with patient B, including masturbation, to prepare her for sex therapy, which he had referred her to. Like with patient A, petitioner denied making vulgar comments to patient B, also denying that he mentioned his sex life with his wife to patient B. He did "not doubt," however, that "what she perceived was very consistent to what she said" had happened, as his discussions with patient B "triggered" her. Petitioner testified that records kept in his office were mostly for him and, if a physician needed information, he or she could easily get up to speed by calling him and discussing a patient.
In addition, petitioner presented expert witness testimony; the Hearing Committee found this expert qualified, but further found that his testimony "was often wide-ranging" and discounted this testimony, finding that it was not focused on the facts and evidence. Four medical colleagues and four patients testified on petitioner's behalf as character witnesses. Each described their positive interactions with and confidence in his skills and professional demeanor. This testimony was afforded limited weight by the Hearing Committee, as it "was not central to the charges." Upon review, the ARB accepted the Hearing Committee's assessments of the evidence.
Deferring to the ARB's credibility assessments, we find the determination to be rationally supported by the record. The patients' collective testimonies, which were credited and found by the ARB to be "strikingly similar" and corroborated by the patients' respective therapists, establish that petitioner made vulgar, sexual, medically unnecessary comments to patients A and B. The record further reflects that petitioner inappropriately touched himself in view of patient A, and that he kept inadequately detailed records of relevant patient information and improperly prescribed medication to patients A and B. The Board's expert testified that all these actions were deviations from the standard of care, with the sexual comments, questions and masturbation incident relative to patient A being "severe" deviations therefrom (see Matter of Gutierrez v New York State Bd. for Professional Med. Conduct, 170 AD3d at 1345; Matter of Bargellini v New York State Dept. of Health, 129 AD3d 1226, 1227 [3d Dept 2015], lv denied 26 NY3d 905 [2015]; Matter of Conteh v Daines, 52 AD3d 994, 995-996 [3d Dept 2008]; Matter of Saunders v Administrative Review Bd. for Professional Med. Conduct, 265 AD2d 695, 696 [3d Dept 1999]; Matter of Carloni v DeBuono, 245 AD2d 970, 972 [3d Dept [*3]1997]; Matter of Gandianco v Sobol, 171 AD2d 965, 967 [3d Dept 1991]).[FN1]
Next, petitioner argues that the Board denied him due process by amending the charges after the hearing began. Due process requires that those accused of misconduct in administrative proceedings receive "fair notice of the charges against [them] so that [they] may prepare and present an adequate defense and thereby have an opportunity to be heard" (Matter of Block v Ambach, 73 NY2d 323, 332 [1989]; see Matter of Rodriguez v State Bd. for Professional Med. Conduct, 110 AD3d 1268, 1269 [3d Dept 2013]). "[T]he requirements of due process [in administrative cases] are not as exacting . . . as [they are] in criminal cases" (Matter of Roberts v New York State Bd. for Professional Med. Conduct, 215 AD3d 1093, 1097 [3d Dept 2023] [internal quotation marks and citation omitted], lv denied 40 NY3d 907 [2023]), and the governing rule allows an amendment "at any time prior to the submission of the hearing officer's report," provided there is "no substantial prejudice" to the accused (10 NYCRR 51.6; see Matter of Rigle v Daines, 78 AD3d 1249, 1251 [3d Dept 2010], appeal dismissed 16 NY3d 825 [2011]; Matter of Kosich v New York State Dept. of Health, 49 AD3d 980, 982 [3d Dept 2008], appeal dismissed 10 NY3d 950 [2008]).
Here, in charging petitioner with failing to maintain adequate records after the hearing began, the Board did not provide petitioner with prehearing notice of this charge. As petitioner asserts, the second day of the hearing began one day after the Board amended the charges. However, we note that the Board's expert was recalled about three weeks thereafter, and petitioner's expert did not testify until seven weeks after the charges were amended (compare Matter of Kiyonaga v New York State Justice Ctr. for the Protection of People with Special Needs, 204 AD3d 1351, 1354 [3d Dept 2022]). Notably, nothing in this record indicates petitioner's defense strategy would have been different if he had additional notice of this charge (see Wolfe v Kelly, 79 AD3d 406, 411 [1st Dept 2010]; appeal dismissed 17 NY3d 844 [2011]; Matter of Kosich v New York State Dept. of Health, 49 AD3d at 982; Matter of Groff v Kelly, 309 AD2d 539, 540 [1st Dept 2003]; compare Matter of Murray v Murphy, 24 NY2d 150, 158 [1969]). Upon review, we conclude that petitioner was not substantially prejudiced in his defense, and, thus, he was not denied due process.
We next address petitioner's claim that the ALJ was biased against him. "[E]very person is entitled to an impartial hearing in an administrative setting" (Matter of Lauersen v Novello, 293 AD2d 833, 834 [3d Dept 2002] [internal quotation marks and citation omitted]; see Matter of Alexander M. v Cleary, 188 AD3d 1471, 1474 [3d Dept 2020]). That said, ALJs are presumed to be impartial, and "petitioner has the burden of providing factual support demonstrating bias and pro[ving] that the administrative outcome flowed from such bias" (Matter of Rigle v Daines[*4], 78 AD3d at 1251 [internal quotation marks, brackets and citations omitted]; accord Matter of Mangiero [Commissioner of Labor],197 AD3d 1458, 1460 [3d Dept 2021], lv denied 38 NY3d 901 [2022]; see Matter of Richstone v Novello, 284 AD2d 737, 739 [3d Dept 2001];10 NYCRR 51.17 [b]). "Merely alleging bias is not sufficient to set aside an administrative determination" (Matter of Sunnen v Administrative Rev. Bd. for Professional Med. Conduct., 244 AD2d 790, 791 [3d Dept 1997] [citation omitted], lv denied 92 NY2d 802 [1998]; accord Matter of Sherwood v New York State Dept. of Motor Vehs., 153 AD3d 1022, 1025 [3d Dept 2017]).
Upon review, we do not find that the record supports petitioner's claim of bias. The phrases petitioner quotes in asserting this claim do evince some frustration on the part of the ALJ but do not rise to evidencing bias. The sustained objections were made in response to improper questions posed by petitioner. Significantly, there is no evidence that these comments affected the determinations of either the Hearing Committee or the ARB (see Matter of Daxor Corp. v State of N.Y. Dept. of Health, 90 NY2d 89, 101 [1997], cert denied 523 US 1074 [1998]; Matter of Sunnen v Administrative Rev. Bd. for Professional Med. Conduct., 244 AD2d at 791-792). Further, although the Board prosecutor's comment in summation that there might be other patients like patients A and B was inappropriate, there is similarly no basis for finding that it improperly affected the determinations.
Finally, as to the penalty, although petitioner did not have sexual contact with patients A and B, he did use his access to them as an opportunity to probe their sexual interest in him and sexually touched himself in patient A's presence. That each patient went to petitioner in an emotionally vulnerable state heightens the impropriety of his conduct (cf. Education Law § 6530 [44] [a]). We have "repeatedly held that the penalty of license revocation is appropriate in cases where a physician engages in sexual misconduct" (Matter of Smith v State Bd. for Professional Med. Conduct, 126 AD3d 1144, 1146 [3d Dept 2015]; see Matter of Singh v New York State Dept. of Health Bd. of Professional Med. Conduct, 74 AD3d 1391, 1393 [3d Dept 2010]; Matter of Cowan v Mills, 34 AD3d 1166, 1168 [3d Dept 2006]). Given this context, we do not find the revocation of petitioner's license "so disproportionate to the conduct as to shock one's sense of fairness" (Matter of Eisenberg v Daines, 99 AD3d 1117, 1120 [3d Dept 2012] [internal quotation marks, brackets and citations omitted]).
Egan Jr., Lynch, Fisher and Powers, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: We reject petitioner's argument that the two patients were inherently incredible because of their mental illnesses and that the Board's expert was inherently incredible because his opinions at the hearing sometimes deviated from his initial report. Although these issues may present grounds for a reasonable alternative determination, they do not demand such a result (see Matter of Morrison v DeBuono, 255 AD2d 710, 711 [3d Dept 1998]; compare Weigand v United Traction Co.,221 NY 39, 42 [1917] [stating that testimony was incredible as a matter of law when a witness testified that she "looked in the direction of an approaching car in full view and did not see it"]).